**BELOIT POWER SYSTEMS, INC., and KEMPER INSUR-ANCE COMPANIES, as Subrogee, Plaintiffs**

**v.**

**HESS OIL VIRGIN ISLANDS CORP., Defendant/Third-Party Plaintiff**

**v.**

**LITWIN CORPORATION, Third-Party Defendant**

Civil No. 80-94

District Court of the Virgin Islands

Div. of St. Croix

March 30, 1983

R. ERIC MOORE, ESQ. (Law Offices of R. ERIC MOORE), Christiansted, St. Croix, V.I., *for plaintiffs*

BRITAIN H. BRYANT, ESQ. (BRYANT, LENAHAN & ELTMAN), Christiansted, St. Croix, V.I., *for defendant/third-party plaintiff HOVIC*

JAMES W. DIEHM, ESQ. (ISHERWOOD, HUNTER & DIEHM), Christiansted, St. Croix, V.I., *for third-party defendant Litwin Corporation*

CHRISTIAN, *Chief Judge*

## MEMORANDUM AND ORDER

At issue in this lawsuit is the question of which party must either ultimately bear the entire burden of paying a sizeable civil judgment entered against the plaintiff in this cause in an action styled

Norwilton Murray v. Beloit Power Systems, Inc., docketed in this division of our court at Civil No. 76-539 (affirmed 3rd Cir., 610 F.2d 149 (1979)), or, at least of sharing the load with plaintiff Beloit Power Systems, Inc. (Beloit). Presently, before the court are cross-motions by Beloit and defendant/third party plaintiff Hess Oil Virgin Islands Corporation (HOVIC) for summary judgment. In hot dispute are the issues of indemnity or contribution. Third-party plaintiff, HOVIC, hoping to leave the field completely unscathed, has hailed third-party defendant Litwin Corporation (Litwin) into the fray, moving for summary judgment against the latter, indemnity being its sole weapon. Litwin, not willing to be found at the bottom of the pile, has filed its cross-motion for summary judgment. Fed. R. Civ. P. 56.

## BACKGROUND

On or about June 14, 1973, HOVIC entered into a contract with Beloit wherein Beloit would supply certain equipment for installation at the HOVIC refinery on St. Croix, Virgin Islands. On or about September 23, 1973, HOVIC contracted with Litwin for the installation of the equipment HOVIC had agreed to purchase from Beloit. On July 21, 1974, Norwilton Murray, a Litwin employee, was seriously injured while installing the Beloit equipment at the HOVIC refinery. Murray brought action against Beloit alleging alternative theories of strict liability under the Restatement (Second) of Torts § 402A, and common law negligence. The jury returned a verdict finding Beloit liable under both the strict products liability and the negligence counts. The jury found Murray's own negligence to account for five percent of his injuries. The jury's net award was $1,747,000. That verdict was affirmed on appeal. Murray v. Fairbanks Morse, 610 F.2d 149 (3d Cir. 1979). Beloit's insurer, the Kemper Group, made payment of $1,937,500 (this included post judgment interest) on January 29, 1980.

On May 23, 1980, Beloit and its insurer brought the present action against HOVIC for contractual indemnity based on the contract of sale (between Beloit and HOVIC) for the equipment or in the alternative, for common law contribution. Defendant HOVIC then impleaded Litwin, as a third-party defendant, arguing that if HOVIC owes anything to Beloit, then through the operation of an indemnity provision in HOVIC's contract with Litwin, Litwin is required to indemnify HOVIC. It is in this setting that the pending summary judgment motions were filed.

## DISCUSSION

### 1. *The Beloit-HOVIC Contractual Indemnity Claim*

The contract between HOVIC and Beloit is embodied in a HOVIC purchase order form. On the reverse side of the purchase order were standard printed "Terms and Conditions". Paragraph 8 of this printed matter was an indemnity provision running in favor of HOVIC, under the terms of which Beloit would indemnify HOVIC for any claims arising from "any act or neglect on the part of the Seller [Beloit] . . . ." Paragraph 1 of the printed "Terms and Conditions" was a warranty provision.

After negotiation, HOVIC, at Beloit's request, typed on the front of the purchase order, a provision supplied to HOVIC by Beloit entitled "Warranty". This provision reads as follows:

### N. *Warranty*

The supplier guarantees that the equipment is free from fault in workmanship and material, and is of sufficient size and capacity and is of proper material to fulfill satisfactorily the operating conditions specified. Should any defect in material, workmanship or operating characteristics develop during 12 months after start-up or 18 months after shipment, whichever occurs first, the supplier agrees to make all necessary or desirable alterations, repairs and replacements of defective equipment, free-of-charge, F.O.B. factory. No allowance will be made for alterations or repairs made by others without written consent or approval of supplier. If the defect or failure to function cannot be corrected, the supplier agrees to replace promptly, free-of-charge, said equipment or to remove the equipment and refund the full purchase price.

Under no circumstances shall the seller have any liability for liquidated damages or for collateral, consequential or special damages or for loss of profits or for actual losses, or for loss of production or progress of construction, whether resulting from delays in delivery or performance, breach of warranty, claims of or negligent manufacture or otherwise. The aggregate total liability of the seller under this contract, whether for breach of warranty or otherwise, shall in no event exceed the contract price. Buyer agrees to indemnify and hold harmless seller from all claims by third parties which extend beyond the foregoing limitations on seller's liability.

The balance of "Terms and Conditions" stated on the reverse side of the purchase order remains in effect.

Beloit now seeks indemnity from HOVIC for the sums it paid to Norwilton Murray, on the basis of the above language. It is Beloit's claim that this provision is a valid indemnity agreement which supercedes the indemnity clause printed on the reverse of the purchase order. HOVIC, on the other hand, argues that this is a warranty clause which Beloit now wishes to transform into an indemnity provision and that, as such, it is insufficient to transfer liability to HOVIC for Beloit's own negligence.

■■ We begin our analysis of this question with the premise that in order for a party to be contractually indemnified for its own negligence, such an intention must be clearly and unambiguously expressed in the contract. United States v. Seckinger, 397 U.S. 203 (1970); Draper v. Airco, 580 F.2d 91 (3d Cir. 1978) (construing Pennsylvania law); Gimbel Brothers v. Vanderherchen, 468 F.2d 597 (3d Cir. 1972) (construing Pennsylvania law). As the Supreme Court stated:

> [A] contractual provision should not be construed to permit an indemnitee to recover for his own negligence unless the court is firmly convinced that such an interpretation reflects the intention of the parties. This principle, though variously articulated, is accepted with virtual unanimity among American jurisdictions.

Seckinger, 397 U.S. at 211 (footnote omitted). Not only must the language be clear and unequivocal, but the burden of proof falls on the party seeking such indemnification. Gimbel Brothers, 468 F.2d at 599. This burden is even greater where the party seeking indemnification drafted the language. Seckinger, 397 U.S. at 210; Gimbel Brothers, 468 F.2d at 599.

In the instant case the quoted contractual language was proposed by Beloit and HOVIC inserted it on its purchase order. See plaintiff's answers to HOVIC's first set of interrogatories, number 29. Hence we may state at the outset that Beloit has the burden of showing that the language clearly and unequivocally intended that Beloit should be indemnified for its own negligence. Moreover, any ambiguity will be construed "most strongly" against Beloit as drafter of the provision. Seckinger, 397 U.S. at 210.

■ Beloit argues that the heading of the provision as "warranty" is not controlling and that the clause specifically mentions "claims of

or negligent manufacture". We agree that the title of the provision is not controlling. However, the phrase "claims of or negligent manufacture" must be taken in the context of the sentence in which it is found. That sentence states, in essence, that Beloit shall not be liable for any of the eight types of *contract* damages listed, whether they result from ". . . claims of or negligent manufacture or otherwise." The next sentence provides, "The aggregate total liability of the seller under this contract, whether for breach of warranty or otherwise, shall in no event exceed the contract price." This sentence, particularly the "or otherwise" phrase, lacks the unambiguous and clear intention that Beloit be indemnified for its own negligence.

■ Beloit also points to the final sentence of the clause as manifesting a clear intention that HOVIC should indemnify Beloit for Norwilton Murray's injuries. It reads: "Buyer [HOVIC] agrees to indemnify and hold harmless seller [Beloit] from all claims by third parties which extend beyond the foregoing limitations on seller's liability." In Gimbel Brothers, supra, the court stated:

> The cases have distinguished situations where the indemnity clause explicitly referred to liability for a party's own negligence from situations where there was "an obligation to indemnify for 'all liability' or 'all loss.'"

468 F.2d at 599 (citation omitted). Here we have a situation which merely cites "all claims . . . ." While it might not be necessary to specifically refer to liability for a party's own negligence, a provision makes no such specific reference from the language actually used, evidence a clear and unequivocal intent to do so. Such is not the case here. We are satisfied that this sentence, and indeed even the entire provision taken as a whole, does not clearly or unequivocally show an intention that Beloit be indemnified for third-party personal injury claims caused by Beloit's negligence. An examination of cases construing various indemnity provisions and the results of these cases supports our conclusions.

Almost on point with the instant case is K+S Oil Well Service v. Cabot Corporation, 491 S.W.2d 733 (Texas Civ. App. 1973). As in our case, the underlying suit in K+S Oil Well Service was a products liability action in which the injured person sued the manufacturer with the manufacturer seeking contractual indemnity from the buyer of the equipment. The indemnity language was also in a "warranty" provision and read, in pertinent part:

> We [seller] shall not be liable for indirect, special, general or

525

consequential damages or injuries and you [buyer] agree to indemnify use from loss, injury or damage to third parties.

491 S.W.2d at 736. The Court held the clause insufficient to entitle the seller to indemnification for its own negligent manufacture of the product. After noting the standard "clear and unequivocal language" requirement, the court stated that a contracting party should be upon fair notice that under this agreement, and through no fault of his own, a large damage award may be assessed against him, solely by reason of negligence attributable to the other contracting party. Here, the Court noted, the clause was not sufficiently clear and unequivocal that such was the intention of the agreement. The Court pointed out, also, that the language was in a "warranty" paragraph and was surrounded by unrelated terms.

The facts in the instant case are very similar. The indemnity language in K+S Oil Well Service is arguably less ambiguous than Beloit's in that it at least mentions injury claims. Beloit's language is also in a warranty provision surrounded by unrelated terms. We find the reasoning of the Texas court persuasive and applicable to the instant case.

In Crum v. Colman-Crocker Textile Machinery Co., 467 F.Supp. 6 (E.D. Tenn. 1978), a party sought indemnification for its own negligence based on the following language:

The Purchaser will indemnify and hold harmless the Company [seller] against and from any and all claims for death, personal injury or property damage arising out of or in any way connected with the delivery, installation or operation of the Equipment.

467 F.Supp. at 7 n.1. The Court held this language insufficient to indemnify an indemnitee for its own negligence, stating that such a provision should be clear and unequivocal, and that broad seemingly all inclusive language was not sufficient. The Court was construing Tennessee law and cited a case in which the supreme court of Tennessee stated that such indemnity agreements would not be construed to indemnify an indemnitee for his own negligence "unless no other meaning can be ascribed to it." Kellogg Company v. Sanitors, Inc., 496 S.W.2d 472, 474 (emphasis deleted).

■ The indemnity language in Crum is more specific than the Beloit language in that it specifically covers personal injury claims "in any way connected" with the furnishing of the equipment. Beloit's language is couched throughout in contract and warranty

526

terms, with the exception of the final two sentences which neither mention personal injury claims or indemnification for Beloit's own negligence. We are not persuaded that mention of "negligent manufacture" in connection with language limiting warranty or contract claims earlier in the provision is sufficient to demonstrate a clear intention that Beloit be *indemnified* for personal injury claims caused by its negligent manufacture of its product.

Beloit points to cases in which an indemnitee was able to indemnify itself for its own negligence and argues that those cases are here controlling. However, close examination of the indemnity language in those cases, and the court's reasoning, reveal that they stand on a completely different footing.

In Jamison v. Ellwood Consolidated Water Co., 420 F.2d 787 (3d Cir. 1970), an employee of a contractor of the water company died as a result of the water company's negligence. The employee's survivors obtained judgment from the water company, which then sought indemnification from the contractor based on the following language:

CONTRACTOR shall indemnify WATER COMPANY and carry insurance in accordance with the following provisions:

\*       \*       \*

CONTRACTOR agrees to indemnify, hold harmless and defend the WATER COMPANY from and against any and all liability for loss, damage or expense which WATER COMPANY may suffer or for which the WATER COMPANY may be held liable by reason of injury (including death) to any person or damage to any property arising out of or in any manner connected with the operations to be performed under this contract whether or not due in whole or in part to any act, omission, or negligence of the WATER COMPANY or any of its representatives or employees.

420 F.2d at 789. The Court held this a valid indemnification provision, noting that the function of the provision was to allocate the burden of procuring insurance. The first sentence of the provision required the indemnitor to obtain insurance. The contract also provided, the court observed, that the contractor was not to commence work under the contract until the stated amounts of insurance were obtained.

The circumstances in Jamison were, therefore, much different from those in our case. That clause was by its own terms, and by the

interpretation by the court, a device to allocate the procurement of insurance. Moreover, the clause is a separate indemnity clause which specifically mentions injury to persons caused "in whole or in part to any act, omission, or negligence of the [water company]." This is a prime example of the specificity and clarity of language the courts require. Compared to the language in Jamison and its purpose (allocation of responsibility for insurance procurement), the contract language in the instant case falls far short of the required clarity of intention to exonerate Beloit for its own negligence.

In Draper v. Airco, 580 F.2d 91 (3d Cir. 1978), the survivor of an electrocuted employee of a subcontractor sued the subcontractor, the contractor (AIRCO) and the owner of the property on which the work was being performed. All three defendants were found to be negligent. Airco sought contractual indemnity from the subcontractor based on this language (the subcontractor is referred to as the "Contractor" in the contract):

> The Contractor shall indemnify Airco and hold it harmless from and against any and all loss, cost, damage or expense of every kind and nature (including, without limitation, court costs, expenses and reasonable attorneys' fees) arising out of injuries to or death of persons (including, without limitations, Airco, the Contractor and any subcontractor and their respective employees, agents, licensees and representatives) or damage to or destruction of property (including, without limitation, property of Airco, the Contractor and any subcontractor, and property of their respective employees, agents, licensees and representatives), in any manner caused by, resulting from, incident to, connected with or growing out of performance of the Contract, unless caused solely by the negligent acts or omissions of Airco, or its employees, agents, licensees or representatives.

580 F.2d at 101. The Court held this to be a valid indemnification clause, noting that Pennsylvania courts will enforce a contractual provision that unambiguously indemnifies a party against its own negligence. The foregoing provision was held to be sufficiently unambiguous because of the language *"unless caused solely* by the *negligent acts* or omissions of Airco." (Emphasis added.) We add that the clause was separately set out as an indemnity provision and specifically listed damages for injuries or death of persons. By calling for indemnity unless caused by the sole negligence of Airco, the provision properly required indemnification for any injury *partly* caused by the negligence of the indemnitee. This is wholly unlike the language in the Beloit-HOVIC contract.

■ Finally, Beloit presses upon the Court the reasoning of Midland Insurance Co. v. Delta Lines, 530 F.Supp. 190 (D.S.C. 1982), as authority that the Beloit-HOVIC contract should be construed to allow Beloit indemnification for its own negligence. In Midland suit was brought against a vessel owner and a manufacturer of a cargo container for death of a longshoreman. The manufacturer had leased the container to the vessel owner. The manufacturer sought judgment against the vessel owner under an indemnity clause in the lease which read:

> [L]essee hereby specifically indemnifies lessor, and agrees to hold lessor harmless, against all loss and damages lessor may sustain or suffer because of . . . (c) the death of, injury to, and damages to the property of, any person as a result of, in whole or in part, the use or maintenance of the equipment of any thereof [sic] while in the custody, possession or control, of lessee or anyone claiming by, through or under lessee.

530 F.Supp. at 192. The next provision in the contract contained in part the following language:

> Lessee further agrees to procure, at lessee's sole cost and expense . . . policies of insurance . . . insuring the lessee against . . . the hazards specified in (c) above [indemnity due to death or injury]

Id. The court held that this language was clear and that "the two clauses read together contemplate full indemnity." Id. at 195. Therefore the indemnitee would be indemnified for its own negligence. The language in Midland, while not specifically mentioning indemnitee's own negligence, clearly contemplated indemnification for personal injury losses, was set out in a separate provision, and was coupled with a provision requiring the indemnitor to procure insurance specifically covering the risks mentioned in the indemnity clause. When an indemnity provision is so coupled with an insurance provision which requires the indemnitor to procure liability insurance, a conscious risk shifting is evident, hence one sees a relaxation in such cases of the requirement of clear and equivocal language. Jamison, supra; Midland, supra. The court in Midland specifically stated that the existence of the insurance provision excused the court from applying the rule of construction, that without specific reference to the indemnitee's fault, an indemnity agreement will not be construed to cover same. We do not feel "excused" from applying this rule of construction. The Beloit-HOVIC provision had nothing to do with allocating the burden by purchasing insurance.

We note also that in the absence of joint indemnification-insurance provisions, the concerns against allowing a party to indemnify himself against his own negligence are even greater in a products liability context, where the purpose is to impose liability for defective products on the manufacturer. See Price v. Shell Oil Co., 466 P.2d 722, 730, 85 Cal. Rptr. 178, 187 (Cal. 1970) (en banc).

For all the foregoing reasons, we hold that the Beloit-HOVIC provision is not sufficient to require HOVIC to indemnify Beloit for Beloit's own negligence in causing Norwilton Murray's injuries. We see no conscious shifting of the risk of personal injury claims by third parties, sounding in strict products liability or negligence, of the clear and unequivocal nature required by Seckinger and the other cases cited herein. When we bear in mind that the burden of showing such clarity of purpose is upon Beloit and that any ambiguity must be construed against it (as the drafter of the provision), we think it is clear that, in these circumstances, this provision may not be relied upon for indemnification.

## 2. *The Beloit-HOVIC Contribution Claim*

As an alternative to its claim for indemnity, Beloit asserts a claim for contribution against HOVIC, stating that HOVIC is a joint tortfeasor and is wholly or partially responsible for Norwilton Murray's injuries. HOVIC argues that Beloit is collaterally estopped from retrying the issues of negligence and fault which were decided in Murray's original suit against Beloit. Murray v. Beloit Power Systems, 450 F.Supp. 1145 (D.V.I. 1978), aff'd. Murray v. Fairbanks Morse, 610 F.2d 149 (3rd Cir. 1979).

In so asserting, HOVIC errs. Beloit is not collaterally estopped from pressing this claim for contribution. Section 886A of the Restatement (Second) of Torts sets out the rule of contrition among tortfeasors in the Virgin Islands.[1] Comment (b) to that section states that this right of contribution applies to:

> all "joint tortfeasors," in the sense of two or more persons who are liable to the same person for the same harm. It is not necessary that they act in concert or in pursuance of a common design, *nor is it necessary that they be joined as defendants.*

(Emphasis added.) Comment (i) confirms this for it states that "[a] separate action for contribution is also available, particularly against a tortfeasor who was not a party to the original action."

---

[1] The Restatements of Law express the common law rules of decision in the Virgin Islands absent local law to the contrary. 1 V.I.C. § 4.

The United States Court of Appeals for the Third Circuit has set out the requirements which must be met if a prior judgment is to collaterally estop a party in a later action in Haize v. Hanover Insurance Co., 536 F.2d 576 (3d Cir. 1976).

> (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) that issue must have been actually litigated; (3) it must have been determined by a valid and final judgment; and (4) the determination must have been essential to prior judgment.

536 F.2d at 579 (citing 1B Moore's Federal Practice ¶0.433). Application of these requirements to the instant case leads to the conclusion that the prior suit will not act as a collateral estoppel here. Firstly, the issue sought to be precluded here is not the same as that involved in the prior action. At no time was the issue of whether negligence on the part of HOVIC contributed to Norwilton Murray's injuries raised. The question before the jury was who, *as between Norwilton Murray and Beloit,* was responsible for Murray's injuries. HOVIC's negligence could have been before the jury had Beloit impleaded HOVIC under Rule 14 of the Federal Rules of Civil Procedure. However, Rule 14 is not mandatory. 3 Moore's Federal Practice ¶14.06. The first requirement set forth by the Court of Appeals being unsatisfied, the remaining three are likewise not met. The issue of HOVIC's negligence was not actually litigated, it was not determined by a final judgment and a determination of HOVIC's possible negligence was not essential to the prior judgment. We hold, therefore, that Beloit is not collaterally estopped from pressing its claim for contribution against HOVIC. Clearly, the action for contribution may not be determined by summary judgment. HOVIC also argues that this action is barred by the statute of limitations. Norwilton Murray's injuries occurred on July 21, 1974. HOVIC urges that any claim Beloit might have had against HOVIC stemming from Murray's injuries accrued on July 21, 1974, and is thus now time barred. This argument is without merit. A cause of action for contribution does not arise until full payment has been made by the tortfeasor seeking contribution. See Restatement (Second) of Torts, § 886A, comment g. Beloit's claim for contribution, therefore, did not arise until January of 1980, when its insurer paid the judgment. This action, having been filed on April 24, 1980, is not time barred.

3. *The HOVIC-Litwin Indemnity Agreement*

HOVIC has asserted its third party claim against Litwin on the

theory that should HOVIC be held liable to Beloit for indemnity or contribution, Litwin will be liable to HOVIC because of an indemnity agreement between HOVIC and Litwin. The pertinent language of that agreement reads:

## VI. INDEMNITY AND INSURANCE

A. From date of Contract until Ready for Charge date, CONTRACTOR shall indemnify and hold HOVIC harmless from and against any and all loss, damage, injury liability and claims thereof, including claims for personal injuries, death and property damage and loss, unless caused by the sole negligence of HOVIC.

C. CONTRACTOR shall, and shall cause its subcontractors to, maintain the following insurance at all times while performing work hereunder. Such insurance shall cover, among other risks, the contractual liability assumed under Paragraph A hereof.

HOVIC argues that this indemnity provision is applicable because Beloit was found to be negligent in the prior action and therefore the injury to Norwilton Murray could not have been caused "by the sole negligence of HOVIC." Litwin counters with the contention that if HOVIC is required to contribute to Beloit for Murray's injuries, it will be solely for HOVIC's negligence and that HOVIC may not claim indemnity for any payment made by reason of its sole negligence. Further, Litwin argues that the clause is not sufficiently clear and unequivocal to allow HOVIC indemnification for its own negligence.

If HOVIC is required to contribute for Murray's injuries, it will be for HOVIC's share of the liability. While the contribution will be solely for HOVIC's negligence, the liability for personal injury damages to Murray will then have been shown to have been *caused* by at least three tortfeasors—Beloit, HOVIC and Murray himself. The provision obviously contemplates that HOVIC be indemnified for any loss it suffers, of the type described, unless HOVIC is found to be the only negligent party.

The Draper case, supra, is directly on point. The indemnity agreement therein contained almost identical language, requiring indemnification unless the injuries were caused solely by the negligence of the indemnitee. The Court of Appeals found this language to be "unambiguous" and to therefore allow for indemnification for the indemnitee's own negligence. 580 F.2d at 101. Three parties were found to be at fault in Draper. The Court held that the "unless caused solely by [the indemnitee]" language was sufficient to give

the indemnitee "a right to indemnification from [indemnitor] *unless* [*indemnitee*] *is found to be the only negligent party.*" *Id.* (Emphasis added.)

■ We believe that Draper controls here. If HOVIC is found liable for contribution, there will then be at least three tortfeasors. The injuries would not have been caused by the "sole negligence of HOVIC." Thus, according to the indemnity provision, HOVIC is entitled to indemnification from Litwin.

This conclusion is further buttressed by the fact that the indemnity provision is tied to a provision requiring the indemnitor to purchase insurance for the risks enumerated in the indemnity provision. This evidences a conscious risk shifting, the function of which is to allocate the burden of procuring insurance. Jamison, supra; Midland, supra.

Litwin argues that in Frederick v. Hess Oil Virgin Islands Corp., 492 F.Supp. 1338 (D.V.I. 1980) aff'd. 642 F.2d 53 (3d Cir. 1981) the district court held that just such a provision was insufficient to allow an indemnitee to be indemnified for his own negligence. However, the district court in Frederick specifically held that the provision described did not apply to the controversy at hand, yet went on, in a footnote, to discuss the result if it had been applicable. Hence, the discussion is purely dicta, and when the Court of Appeals affirmed the decision, it was not on the basis of that comment by the district court. We regard Draper as a binding precedent, and dispositive of the present issue.

On the basis of the foregoing, we hold that the indemnity provision in the HOVIC-Litwin contract is sufficient to cover the circumstances of the present case and that Litwin will be required to indemnify HOVIC for any contribution it must make to Beloit for Norwilton Murray's injuries.

## ORDER

The premises considered and the Court being fully advised,

IT IS ORDERED that the motion of Hess Oil Virgin Islands Corporation for summary judgment on the issue of indemnity regarding the Beloit-HOVIC contract be, and the same is hereby, GRANTED;

IT IS FURTHER ORDERED that the motion of Hess Oil Virgin Islands Corporation for summary judgment on the issue of contribution be, and the same is hereby, DENIED;

IT IS FURTHER ORDERED that the motion of Beloit Power Systems, Inc., for summary judgment on the issue of indemnity be, and the same is hereby, DENIED;

IT IS FURTHER ORDERED that the motion of Hess Oil Virgin Islands Corporation for summary judgment on the issue of indemnity in the HOVIC-Litwin contract be, and the same is hereby, GRANTED;

IT IS FURTHER ORDERED that the motion of Litwin Corporation for summary judgment be, and the same is hereby, DENIED.