**BELOIT POWER SYSTEMS, INC. and Kemper Insurance Companies, as Subrogee, Appellants,**

v.

**HESS OIL VIRGIN ISLANDS CORPORATION.**

No. 83–3354.

United States Court of Appeals, Third Circuit.

Argued Dec. 5, 1984.

Decided March 29, 1985.

Rehearing and Rehearing In banc Denied April 29, 1985.

R. Eric Moore (argued), Christiansted, St. Croix, V.I., for appellants.

Britain H. Bryant (argued), Bryant, Lenahan & Eltman, Christiansted, St. Croix, V.I., for appellee.

Before SEITZ, GIBBONS and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

At issue in this appeal is the interpretation of an indemnification clause under which Beloit Power Systems, Inc. (Beloit) seeks to impose on Hess Oil Virgin Islands Corp. (Hess) the obligation to pay damages for which it was held liable in an earlier lawsuit. These damages arose when an instrument fitter, Norwilton Murray, fell and suffered severe spinal injury while installing an electrical control panel built by Beloit at the Hess oil refinery in St. Croix, Virgin Islands. Murray was employed by Litwin Corporation, the installer of the equipment. He fell when the iron bar on which he leaned during the installation gave way because it was inadequately welded to the equipment.

Murray sued Beloit alleging both negligence and strict products liability. The jury found Beloit liable under both theories and attributed five percent of the fault to Murray. After the appropriate reductions, Murray was awarded $1,747,855.60. This court affirmed the judgment. *See Murray v. Beloit Power Systems, Inc.*, 450 F.Supp. 1145 (D.V.I.1978), *aff'd sub nom. Murray v. Fairbanks Morse*, 610 F.2d 149 (3d Cir. 1979).

Beloit then brought this action against Hess seeking indemnity based on the contract of sale between Beloit and Hess or, in the alternative, for contribution based on its allegation that Murray's accident was caused in whole or in part by Hess' negligence. Hess impleaded Litwin for indemnity based on the contract between them. The Hess/Litwin controversy is the subject of a separate appeal, also decided today.

The indemnity provision that forms the basis of Beloit's indemnity claim against Hess was negotiated by the parties after Beloit's predecessor, Colt Industries (hereafter jointly referred to as Beloit), had made it clear that the warranty and indemnity provisions on Hess' printed purchase order form were unacceptable. Beloit requested the language which was typed and inserted by Hess. The portion of the language at issue is as follows:

N. Warranty

... Under no circumstances shall the seller have any liability for liquidated damages or for collateral, consequential or special damages or for loss of profits or for actual losses, or for loss of production or progress of construction, whether resulting from delays in delivery or performance, breach of warranty, claims of or negligent manufacture or otherwise. *The aggregate total liability of the seller under this contract, whether for breach of warranty or otherwise, shall in no event exceed the contract price. Buyer agrees to indemnify and hold harmless seller from all claims by third parties which extend beyond the foregoing limitations on seller's liability.*

(emphasis added).

Beloit, relying on the underlined language, contends that Hess (the "Buyer") undertook to indemnify it for all claims, including those filed by third parties for personal injuries, beyond the amount of liability Beloit (the "Seller") agreed to shoulder, which was $397,481 ("the con-

tract price" modified by subsequent change orders). Hess moved for summary judgment, relying on the contract language to defeat Beloit's indemnity claim and on collateral estoppel and other legal principles to defeat the contribution claim. Beloit filed a cross-motion for summary judgment on the indemnity claim, supported by the affidavit of John Ivey, its negotiator with Hess on the contract. Ivey stated that Beloit advised Hess' representative that Beloit "would not agree to the warranty and indemnity provisions" contained on the reverse of Hess' standard purchase order, that Beloit "specifically intended to limit the liability of [Beloit] in any case whatsoever to have [Hess] indemnify us [Beloit] for any amount we were to pay above [the] contract price." Ivey stated that Hess agreed to these new provisions, included them in its purchase order, and subsequently included them again with a change order. Ivey further averred that "the typed provisions ... were specifically designed to supersede the printed 'Terms and Conditions' as to warranty and indemnity, [and] were drafted by [Hess] ... at the request of [Beloit] ... with the specific intent to limit the liability of Beloit *under all circumstances* to the total of the contract price" (emphasis added). Hess filed no counter affidavit. Nor does it contend that the contents of the Ivey affidavit would not be admissible in evidence.

The district court granted Hess' motion for summary judgment on the issue of indemnity. *Beloit Power Systems, Inc. v. Hess Oil Virgin Islands Corp.*, 561 F.Supp. 279, 287–88 (D.V.I.1983). The district court's decision was based in large part on "the premise that in order for a party to be contractually indemnified for its own negligence, such an intention must be clearly and unambiguously expressed in the contract." *Id.* at 282.

The court held that the provision was not sufficiently clear to support Beloit's claim for indemnification. *Id.* at 285. The bases for this conclusion were as follows. First, the court noted that the burden of proof falls on the party seeking indemnification, particularly where, as here, that party

drafted the agreement. *Id.* at 282. Second, the court found that the crucial sentence referred generally to indemnification for "all claims" and did not explicitly mention indemnification for "negligence" or even for "personal injury." In reaching this conclusion, the court discounted the reference to "negligent manufacture" as referring, in context, to contract damages. *Id.* at 282–83. Finally, the court noted the absence of a provision requiring Hess to insure the liability allegedly shifted to it by the clause in question. This, the court found, supported its conclusion that the parties did not intend that this risk be shifted. *Id.* at 285. With regard to the contribution claim, the court held that since Hess' negligence as a joint tortfeasor was not litigated in the prior action, Beloit's claim for contribution from Hess could not be determined on a motion for summary judgment. *Id.* at 286.

Because the contribution claim remained for litigation, the order granting summary judgment would not have been appealable. The court certified its order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), and we granted permission to appeal.

Beloit argues that the district court erred as a matter of law in denying its cross-motion for summary judgment because the language of the contract clearly and unambiguously requires Hess to indemnify it for liability to a third party based upon negligent manufacture and product defect. It contends that we must focus on the typed provisions on the face of the contract because the intent of the parties, circumstances of negotiation and rules of contractual construction all require a finding that the typed provision governs. Hess counters that if Beloit had intended the typed provision to supersede the standard indemnification provision printed on Hess' purchase order (which provided that Hess was entitled to indemnification for injuries caused to third parties by Beloit's product), then Beloit should have insisted upon the deletion of the printed provision.

■ The district court did not expressly deal with Hess' contention, but since its discussion on this issue is exclusively directed at the interpretation of the typed provision, we may conclude that the court implicitly held that the typed provision governs. Such a holding is consistent with the applicable legal principle that a typewritten term prevails over a printed term in a standard form. The Restatement (Second) of Contracts § 203(d) (1981) which is the controlling law in the Virgin Islands in the absence of local laws to the contrary, *see* V.I.Code Ann. tit. 1, § 4 (1967), provides that "separately negotiated or added terms are given greater weight than standardized terms or other terms not separately negotiated."

Furthermore, were there any question that the typed provision was to supersede the one printed on the form, Ivey's affidavit states "[t]hat it was the intent of the parties to specifically supersede the printed terms and conditions of the purchase order form used by Hess Oil Virgin Islands Corporation by inserting the specifically worded typewritten provisions regarding warranty and indemnity." Since the affidavit shows that Ivey was personally involved in the negotiations, and it stands unrebutted, that fact may be deemed established. Fed. R.Civ.P. 56(e). Thus, we conclude, as the district court also apparently did, that the only reasonable construction is that the contract provision to be applied is the typed provision inserted at the request of Beloit.

■ On review of the district court's grant of a motion for summary judgment, we must apply the same test the district court should have used initially. *See Landtect Corp. v. State Mutual Life Assurance Co.*, 605 F.2d 75, 79 (3d Cir.1979); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). In this case, the issue is whether the contract clearly and unambiguously provides for indemnity. We conclude that it does.

The first of the three relevant sentences set forth, ("Under no circumstances shall the seller have any liability for liquidated damages ...") limits Beloit's liability to Hess under the contract by eliminating certain types of damages, "whether resulting from delays in delivery or performance, breach of warranty, claims of *or negligent manufacture or otherwise.*" The second sentence limits Beloit's aggregate total liability to the contract price, "whether for breach of warranty or otherwise". The third sentence contains Hess' undertaking to indemnify Beloit "from *all claims by third parties* which extend beyond the foregoing limitations on seller's liability." It is, as Beloit argues, hard to imagine language that would be more absolute or unequivocal.

The district court placed heavy reliance on *K & S Oil Well Service, Inc. v. Cabot Corp.*, 491 S.W.2d 733 (Tex.Civ.App.1973), a case in which the court stated that in order to contract one's self out of liability for one's own fault, "the term negligence or fault must be used." *Id.* at 738. We do not accept this statement of the law. In *United States v. Seckinger*, 397 U.S. 203, 213 n. 17, 90 S.Ct. 880, 886 n. 17, 25 L.Ed.2d 224 (1970), the Court stated, applying federal law, "We specifically decline to hold that a clause that is intended to encompass indemnification for the indemnitee's negligence ... must explicitly state that indemnification extends to injuries occasioned by the indemnitee's negligence." This court has stated that "a broadly worded indemnification clause need not also recite the specific sorts of loss within its coverage." *First Jersey Nat'l Bank v. Dome Petroleum Ltd.*, 723 F.2d 335, 340 (3d Cir.1983) (applying New Jersey law). *See also Draper v. Airco, Inc.*, 580 F.2d 91, 101 (3d Cir.1978); *Jamison v. Ellwood Consolidated Water Co.*, 420 F.2d 787, 788–90 (3d Cir.1970) (both applying Pennsylvania law).

Furthermore, the K & S case is hardly comparable with the present case on the facts. The indemnity clause in that case was printed on the back of a sales receipt. *Id.* at 736–37. It was never expressly noted by the buyer and was buried in a warranty provision. Although the indemnification language in the Beloit/Hess agree-

ment is also in a provision labeled "Warranty", it was separately negotiated, and we may conclude that Hess was aware of its presence.

■ Nor do we agree with Hess that the indemnification provision is inapplicable because Murray's recovery against Beloit could have been on both negligence and strict liability theories, and the indemnity clause does not specifically refer to strict liability. The theory triggering liability should not affect the applicability or interpretation of the indemnification clause, if its language is broad enough to encompass all theories of liability. *See Midland Insurance Co. v. Delta Lines, Inc.*, 530 F.Supp. 190, 193 (D.S.C.1982).

The final reason given by the district court for its grant of summary judgment to Hess was the absence of a requirement obliging Hess to carry insurance to cover the risk it undertook by the indemnity provision. Although the presence of such a provision may make it clear that risk-shifting was intended, *see Midland Insurance*, 530 F.Supp. at 193–94, it does not follow that the absence of such a provision is a critical factor. The cases cited by the district court involved contractors who were required to carry insurance to indemnify the owner. *See Jamison*, 420 F.2d at 788; *Midland Insurance*, 530 F.Supp. at 192. As we recently observed in *Willey v. Minnesota Mining & Manufacturing Co.*, 755 F.2d 315 (3d Cir.1985), owners frequently seek to have contractors and subcontractors bear the risk of insuring against claims by their own workers. There is no evidence that when parties deal on equal terms as buyer and seller, each party does not bear responsibility for insuring its own commercial risks. The record fails to show that Hess was not insured, and thus the absence of a provision requiring it to be insured cannot significantly aid in the construction of the indemnity language.

■ Hess' argument depends to a large extent on the anachronistic aversion to contracts that indemnify the indemnitee against losses resulting from its own negligence. *See, e.g., K & S Oil Well Service, Inc. v. Cabot Corp.*, 491 S.W.2d at 738.

We decline to adopt that view. The law now permits the indemnitee to recover for its own negligence if the court is firmly convinced that such an interpretation reflects the intention of the parties. *United States v. Seckinger*, 397 U.S. at 211, 90 S.Ct. at 885.

The district court did not discuss or allude to the affidavit of Ivey, Beloit's negotiator, with regard to the negotiations and the intent of the typed indemnity provision. That affidavit stands unrebutted. In light of that affidavit, the supersession of the typed provisions over the printed form, the unambiguous and inclusive language of Hess' indemnity undertaking, and the fact that any other interpretation would deprive the key sentence of its plain meaning, we conclude that Hess undertook to indemnify Beloit for claims of third parties, whether based on Hess' negligence or strict liability. Thus, Hess is obliged to reimburse Beloit for the amount paid to Murray minus the contract price.

We will therefore reverse the district court's order granting summary judgment to Hess and, because there is no genuine issue of material fact, direct that summary judgment be entered for Beloit.