**CHRISTOPHER ADAMS, Plaintiff**
**v.**
**ST. CROIX BASIC SERVICES, Defendant**

Civil No. 396/1998

Territorial Court for the Virgin Islands

Division of St. Croix

September 27, 2002

LEE J. ROHN, ESQ., Law Offices of Lee J. Rohn, Christiansted, St. Croix, *Attorney for Plaintiff*

RHONDA HOSPEDALES, ESQ., NANCY YOUNG, ESQ., Nichols, Newman, Logan & D'Eramo, P.C., Christiansted, St. Croix, *Attorneys for Defendant*

CABRET, *Judge*

## MEMORANDUM OPINION

### (September 27, 2002)

THIS MATTER is before the Court on the Plaintiff's Motion to Enforce Settlement and the Defendant's opposition. For the reasons which follow, the Court will grant the relief which Plaintiff seeks.

## STATEMENT OF FACTS

Plaintiff, Christopher Adams ("Adams" or "Employee"), was employed with the defendant company. The circumstances under which his employment with the defendant ended are in dispute and were the subject of this action for damages. After litigation commenced, the parties entered into a settlement agreement, as evidenced by a release executed on August 9, 2001. Of the settlement amount, $14,000 was designated as lost wages and was to be taxed accordingly. The instant dispute arose after the defendant, St. Croix Basic Services ("Defendant" or "Employer"), deducted from that portion of the settlement its matching share of the Federal Insurance Contribution Act tax ("FICA") totaling $1,701.00, in addition to the employee's share.

## DISCUSSION

Plaintiff does not dispute the validity of the FICA deduction representing his share of the tax, but argues the defendant acted improperly and in contravention of the settlement agreement in deducting its share of the FICA tax. Plaintiff argues that such shifting was not contemplated by the parties and, additionally, that doing so is contrary to public policy and would amount to an unenforceable agreement assuming, *arguendo*, an agreement is found. The defendant opposes the motion for enforcement, relying on the language of the agreement, which it claims plainly establishes the parties' agreement for the plaintiff to assume *any* tax liability arising from the settlement.

At issue, therefore, is whether the settlement agreement may properly be construed to indemnify the defendant from liability for its share of the federal tax on lost wages which were paid as part of that agreement and whether an agreement to shift the tax liability from employer to employee is illegal or deemed unenforceable as against public policy. Neither party has cited relevant authority for the proposition that an agreement to shift the employer's tax liability to the employee is illegal

62

or unenforceable.[1] However, because the Court now decides that the contract does not contemplate that result, it need not reach the issue of illegality or unenforceability.[2]

█ In interpreting a contract, the Court's primary goal is to determine and effectuate the meaning intended by the parties. *See*, RESTATEMENT (SECOND) OF CONTRACTS §§ 200, 201 comment c (1979); *see also, James v. Zurich-American Ins. Co.*, 203 F.3d 250 (3d Cir. 2000). Misunderstandings or disputes as to the meaning of a particular term are to be resolved in accordance with the guidelines set forth in Sections 20 and 201 of the RESTATEMENT. Section 201 provides in relevant part that, in the event of a dispute as to the meaning of a contract term, the contract is to be interpreted according to the meaning attached by one party if "that party had no reason to know of any different meaning attached by the other, and the other had reason to know the meaning attached by the first party." *Id.* at § 201(2)(b); *see also*, § 20(2)(b). Additionally, a party is generally deemed to have reason to know of meanings in general usage, and such meanings are to be viewed in the context of the transaction. *Id.* at § 201, comment b.

In determining what the parties knew or had reason to know, this Court must consider the contract as a whole, its primary purpose and the context in which it was made. *Id.* Additionally, the custom or course of conduct between the parties and the ordinary usages of the relevant trade or transaction are also significant factors to consider in determining the intended agreement. *Id.* at § 202(5) (intent of parties should be

---

[1] Counsel for the defendant urges the Court to follow the reasoning of *Hector v. Bohlke Int'l Airways, Inc.*, Civ. 1999/75 (D.V.I. Jan. 15, 2002), which held that the indemnification language at issue here was not illegal. However, that Order, issued by the Magistrate Judge, is now being appealed. Moreover, it must be noted that the *Hector* Court reached only the issue of illegality and did not address whether the disputed contract terms may be interpreted to impose the employer's tax burden on the employee or whether such a term would be unenforceable as against public policy.

[2] The Court feels compelled to note, however, that any agreement to shift one's tax burden would ultimately be ineffective in shielding a party from liability as against the taxing agency; that agency would look to the party against whom the tax was assessed, regardless of the existence of an agreement with a third-party. *See, e.g., In re Earthmovers, Inc.*, 199 B.R. 62 (D. Fla. 1996) (noting that each taxpayer has a non-delegable duty to satisfy its tax obligations, and a contract with a third party does not relieve the taxpayer of that duty).

interpreted consistent with each other and with any relevant course of performance, course of dealing, or usage or trade); *see also, id.* at §§ 222(1) (defining usage of trade), 220; 223 (defining course of dealing); 5, comment a ("... the language and conduct are to be understood in the light of the circumstances, including course of dealing or usage of trade or course of performance").

■ Ultimately, the Court will generally interpret a disputed term against the draftsman, in the absence of other evidence or factors that compel a different result. *Id.* at § 206 and comment a.[3] Here, the contract language on which defendant relies for its conclusion that it is indemnified from any and all tax burdens provides as follows:

> Releasor agrees that $14,000.00 (Fourteen Thousand) of the total settlement amount shall be taxed as lost wage income, which taxes are being withheld, *so that the net amount paid to Releasor is $___.* [sic] Releasor further agrees that, *in the event that any additional or other taxes, penalties or liabilities* of any kind are assessed or incurred by the Released Party for any reason in conjunction with this agreement and/or payments thereunder, Releasor will completely indemnify and hold harmless Released Party for said taxes, penalties or liabilities. Nothing contained herein shall be construed or relied upon as any advice or opinion by or on behalf of the Released Party regarding the tax treatment of the settlement payment.

*See,* Pl's Release, at 2 (emphases added). Defendant argues that the language quoted above, and particularly the clause which specifies its non liability for "any additional or other taxes, penalties or liabilities of any kind," serves to indemnify it from *"any taxes"*, including its FICA contributions. The defendant's attempt to exorcise a single word from the quoted paragraph, while disregarding the rest of the clause, sweeps too broadly and distorts the clause from its context. Indeed, when read as a

---

[3] *Compare, Smithkline Beecham Corp. v. Rohm & Haas Co.,* 89 F.3d 154, 154 n. 3 (3d Cir. 1996) (indemnity contracts are to be interpreted based on ordinary contract law; strict construction against the party benefiting from the clause is applied only where one seeks indemnity from his own negligence); *see also, Beloit Power Sys. v. Hess Oil Virgin Islands Corp.,* 19 V.I. 519, 561 F. Supp. 279 (D.V.I. 1983) (clear and unequivocal language required to enforce indemnity provision in the negligence context).

whole and in the context of the transaction, the very language on which the defendant relies supports a contrary interpretation.

First, the Court cannot ignore the employment context in which this contract was made. The indemnification clause makes clear at the outset that $14,000 of the settlement was to be regarded as lost wages, for which taxes were being withheld. In the employment relationship— which the parties previously enjoyed and which governs this clause—the tax burdens are distributed according to federal statute: that is, the employee pays his FICA taxes, according to the formulas outlined in Title 26, Section 3101 of the United States Code, and the employer similarly pays its own share, pursuant to Section 3111 of that statute. Given the employment context and purpose of this transaction, an ordinary, reasonable person would necessarily contemplate only the deduction of those taxes ordinarily charged to an employee against earned wages, pursuant to law, and not the matching tax burden which every employer who falls within the statute must routinely bear.

Given this context, the Court can discern no reason why a reasonable person would have contemplated a shifting of these statutory—and customary—burdens, in the absence of clear and unequivocal language to the contrary. On the other hand, because the parties interacted previously in an employment relationship in which the employee was never called upon to pay the employer's share of FICA taxes, and because of the existence of a long-standing statutory scheme that clearly provides for separate obligations of both parties, this Court concludes that the defendant must have known—and certainly had reason to know—that the plaintiff could not have shared its understanding of the indemnity provision. Moreover, because the amount and type of taxes to be assessed are governed by express statutory provisions, with no discretion vested in the employer, there would have been no reason for a reasonable person standing in the shoes of the plaintiff to assume that the parties intended a different meaning in this instance.

The final phrase in the first sentence of the indemnity provision quoted above is also instructive in determining the parties' intent. The first sentence was clearly intended to put the plaintiff on notice that a particular portion of the settlement was to be assigned as wages and taxed as is customary for such income. The concluding portion of that sentence states that the net amount remaining after the tax deductions was to be remitted to the plaintiff, suggesting that the parties intended

that to be a full consideration of the tax treatment to be afforded the wage amount, and further supporting the conclusion that the parties contemplated only the regular tax deductions.

Having concluded that the first sentence reflected the parties' complete agreement regarding the tax treatment of that portion of the lost income, along with the concomitant statutory tax liability for that amount, the Court now finds that the succeeding phrase was intended to address only those liabilities not otherwise contemplated as part of the regular employment relationship. The language of the succeeding phrase supports this conclusion:

> Releasor *further* agrees that, *in the event that any additional or other taxes*, penalties or liabilities of any kind are assessed or incurred by the Released Party for any reason in conjunction with this agreement and/or payments thereunder, Releasor will completely indemnify and hold harmless Released Party for said taxes, penalties or liabilities.

First, as earlier noted, this phrase comes immediately following a conclusory statement that the net proceeds remaining after the required tax deductions are to be remitted to the plaintiff. Additionally, this phrase is significant in the chosen terms—specifically "further", "in the event" and "additional or other"—which must be applied according to their ordinary meanings. *See*, RESTATEMENT § 202(3)(a). Based on their ordinary and prevailing meanings, those terms tend to establish the parties' intent to protect against circumstances which were not considered or covered in the preceding clause but which could arise after execution of the agreement. *See*, BLACK'S LAW DICTIONARY 608 (5th ed. 1979) (defining "further" as a word of comparison which means additional or "something beyond what has been said or likewise, or also"), 992 ("other" connotes that which is "[d]ifferent or distinct from that already mentioned; additional, or further"). Moreover, "in the event" is a conditional phrase, covering circumstances which may or may not arise in the future. *See*, WEBSTER'S NEW COLLEGE DICTIONARY 388 (1995) ("[i]f it should happen").

■ The above-quoted language therefore presents strong evidence that the parties intended to protect the defendant from *unanticipated* taxes, apart from the regular employment deductions, which were not otherwise covered in the agreement. In the employment context, assessments under

FICA can hardly be said to be an unanticipated liability. Indeed, this is a tax routinely assessed against both employees and employers for any wages earned, each party bearing its own share. Such taxes are, therefore, an integral part of any employment relationship that falls within the statute, and can present no surprise to either party following an agreement. This language, when coupled with the context of the transaction, the paragraph as a whole and each party's statutory and customary duties, makes clear that the parties had already contemplated that the employee's taxes were to be withheld from the lost wages amount and intended only to protect the defendant from any additional liabilities above and beyond those taxes. This Court therefore finds unpersuasive the defendant's contention that the indemnification clause, as phrased, clearly establishes the parties' understanding and intent to shift the employer's FICA tax burden to the employee. An appropriate order is attached.