

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-20-2005

# Church Mutl Ins Co v. Palmer Constr Co Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2787

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Church Mutl Ins Co v. Palmer Constr Co Inc" (2005). *2005 Decisions.* Paper 523.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/523

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-2787

CHURCH MUTUAL INSURANCE COMPANY,
Appellant

v.

PALMER CONSTRUCTION COMPANY, INC.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
D.C. Civil 02-cv-07597
District Judge: The Honorable Charles R. Weiner

Submitted Under Third Circuit LAR 34.1(a)
September 13, 2005

Before: SLOVITER, BARRY, and SMITH, Circuit Judges

(Opinion Filed: September 20, 2005)

OPINION

BARRY, Circuit Judge

In this diversity case, we are asked to construe the meaning of a waiver clause

contained in a standard American Institute of Architects ("AIA") agreement and its effect

on a subrogation action brought by Church Mutual Insurance Company ("Church Mutual") against Palmer Construction Company ("Palmer"). Because we agree that the waiver clause prohibits Church Mutual from bringing its negligence and breach of contract claims against Palmer, we will affirm the order of the District Court.

**I.**

On July 10, 2000, Palmer, a construction company based in Harrisburg, Pennsylvania, entered into a construction contract with Temple Ohev Sholom ("the Temple"), also located in Harrisburg. The contract called for renovations and additions to the Temple itself, the Sanctuary Building, and the Mary Sachs Building.

Palmer and the Temple used AIA Document A107, a standard contract form used in the construction industry. Article 17 of the form embodied the parties' agreement on the insurance coverage to be provided on the project, and assigned responsibility to both the Contractor (Palmer) and the Owner (the Temple) for securing the various forms of insurance. Under Article 17.3, the Temple was required to

> "purchase and maintain . . . property insurance upon the entire Work[1] at the site to the full insurable value thereof. This insurance shall be on an all-risk policy form and shall include interests of the Owner [and] the Contractor . . . in the Work and shall insure against the perils of fire and extended coverage and physical loss or damage including, without duplication of coverage, theft, vandalism and malicious mischief."

---

[1]"Work" is defined in the contract as "the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations." A24.

A27.

To comply with its obligations under Article 17.3, the Temple relied on the insurance policy it had since May 11, 1999 with Church Mutual of Merrill, Wisconsin. That policy included blanket coverage of the Temple, the cemetery, and one residence, as well as limited coverage of other buildings or items. See A84-86. The only relevant addition the Temple made to the policy was to add Builders' Risk Coverage, which became effective on July 28, 2000 and covered the addition that was being built to the Temple.

On October 9, 2000, a fire caused extensive damage to the Temple, gutting two stories of the school building and the Sanctuary Building next door. An investigation by the Harrisburg Police Department disclosed that the fire was the result of arson, set by a trespasser to conceal evidence that he had been on the property and stealing tools from Palmer. Church Mutual paid the Temple more than $1.4 million under the insurance policy for the damages caused by the fire.

Church Mutual now seeks to recoup all or some of that money from Palmer by bringing a subrogation claim on behalf of its insured, the Temple. Specifically, Church Mutual alleged, in a complaint brought in the Eastern District of Pennsylvania, that Palmer was negligent in failing to secure and protect the work site, and that Palmer

breached the contract it had with the Temple by failing to protect the property.[2] In its answer to the complaint, Palmer raised, among various other defenses, an argument based on a clause in the contract that provided: "The Owner and Contractor waive all rights against each other . . . for damages caused by fire or other perils to the extent covered by property insurance obtained pursuant to this Article 17 or any other property insurance applicable to the Work[.]" A27.

Based on that clause, Palmer moved to dismiss Church Mutual's complaint on December 4, 2003, contending that the waiver precluded Church Mutual, as the Temple's subrogee, from bringing a claim that the Temple itself would be barred from pursuing.[3] Church Mutual responded by filing a motion for partial summary judgment, seeking "an Order declaring that Article 17 of the July 10, 2000 construction contract between defendant, [Palmer], and [the Temple] does not bar Church Mutual's Claim against [Palmer] in the instant action." A225.

On June 10, 2004, the District Court found in Palmer's favor, explaining that "[o]ur Court of Appeals, this Court, and the Superior Court of Pennsylvania have all concluded that nearly identical clauses to the ones contained in Articles 17.6 and 17.3 of the Contract abrogate the property owner's insurer's subrogation rights derivative from its

---

[2]The Temple is not a party to this action.

[3]Palmer also argued that Church Mutual could not maintain a cause of action against it because it was an insured under the policy the Temple had with Church Mutual. Given that the waiver issue is dispositive, we will not address this argument.

insured." A3. The District Court also noted that other state courts have similar understandings of the effect of waiver clauses. Therefore, the Court concluded, Article 17.3 shifted the risk of loss to the Temple, leaving Church Mutual without recourse against Palmer, even if the property damage was caused by Palmer's negligence.

Church Mutual appealed. It argues on appeal that the District Court erred in its interpretation of the waiver clause and prematurely determined that Church Mutual could prove no set of facts that would entitle it to relief. More precisely, Church Mutual asserts that (1) it is not bound by the waiver clause because it was not a party to the construction contract; (2) the waiver clause is ambiguous and unenforceable because it directly conflicts with Palmer's obligation to secure the work site and to indemnify the Temple for damages; and (3) even if the waiver clause is enforceable, it would not apply to its claim for damages to property that was not "Work" under the contract.

**II**.

The District Court had jurisdiction over this diversity action under 28 U.S.C. § 1331, and we have jurisdiction pursuant to 28 U.S.C. § 1291. Although the District Court granted the motion to dismiss under Fed. R. Civ. P. 12(b)(6), the parties had submitted documents outside of the pleadings, such as the construction contract and the Temple's insurance policy with Church Mutual, and so we exercise plenary review, as if this appeal had come to us from the grant of a motion for summary judgment. See Shenango Inc. v. Apfel, 307 F.3d 174, 185 n.6 (3d Cir. 2002) (citing Smith v. Johns-Manville Corp., 795

5

F.2d 301, 306 (3d Cir. 1986)).  We will take Church Mutual's arguments in turn.

As to the first argument, it is a misunderstanding of the doctrine of subrogation to argue that a contract clause that applies to a subrogor does not apply to the subrogee.  It is well-established that subrogation is derivative in nature, placing the subrogee "in the precise position of the one to whose rights and disabilities he is subrogated."  Allstate Ins. Co. v. Clarke, 527 A.2d 1021, 1024 (Pa. Super. Ct. 1987); see also Bell v. Slezak, 812 A.2d 566, 574 n.8 (Pa. 2002) (summarizing with approval the Superior Court's explanation that "a subrogee has no greater rights than those held by the subrogor"), Chow v. Rosen, 812 A.2d 587, 590 (Pa. 2002) (same).  Thus, to put it simply, the waiver clause would have the same effect on the Temple, as subrogor, as it would have on Church Mutual, as subrogee.  Church Mutual, standing in the Temple's shoes, as it were, can do no more or no less under the contract than what the Temple could do.  As such, whether or not Church Mutual was a party to the construction contract is irrelevant in considering the effect of the waiver clause.[4]

Turning to the argument that the waiver clause is ambiguous, Church Mutual points to other clauses in the contract that give Palmer responsibilities in supposed contradiction of the waiver clause, i.e. Article 9.12, Article 16.1, and Article 17.1.  Under

---

[4]To the extent that Church Mutual argues that the waiver clause cannot apply to it because of the Temple's obligation, *under the insurance policy*, to protect Church Mutual's subrogation rights, see, e.g., Appellant's Br. at 6, that is an argument to be directed at the Temple, not at Palmer.

Article 9.12, Palmer was required to indemnify the Temple "from and against claims, damages, losses, and expenses . . . arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself)." Article 16.1 made Palmer responsible for maintaining safety precautions to protect "employees on the Work" and "other property at the site or adjacent thereto," and Article 17.1 required Palmer to purchase "insurance for protection from claims under workers' or workmen's compensation acts and other employee benefit acts." Church Mutual argues that those clauses, when read together, "expressly contemplated claims by the owner, Temple, against Palmer for injury to or destruction of the Work[,]" and at the very least create an ambiguity in the contract that precludes application of the waiver clause. See Appellant's Br. at 11.

We do not agree. A contract is ambiguous "if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." Madison Constr. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999) (citation omitted). Here, there is only one way to understand the clauses, both in isolation and in context. Article 9.12 clearly states that Palmer must indemnify the Temple if a claim is brought *against the Temple* for a loss sustained as a result of Palmer's performance of the work. Article 16.1 makes Palmer responsible for maintaining a safe work site, and Article 17.1 requires Palmer to have adequate insurance to cover any worker's

7

compensation claims that might be brought against it.  None of those clauses conflicts

with the waiver clause in Article 17.6 that bars both Palmer and the Temple from bringing

claims against each other for damages caused by events, such as a fire, that are covered by

the Temple's property insurance.[5]  Therefore, the contract is not ambiguous, and we must

apply the waiver clause.  See Gene & Harvey Builders, Inc. v. Pa. Mfrs. Ass'n Ins. Co.,

517 A.2d 910, 913 (Pa. 1986) ("Where . . . the language of the contract is clear and

unambiguous, a court is required to give effect to that language.") (internal citation

omitted).

Finally, having determined that the waiver clause is enforceable against Church

Mutual, we turn to Church Mutual's argument that the clause only bars claims for

damages related to "Work" under the contract, but has no bearing on claims related to

property that was damaged by the fire but that was not renovated or constructed by

Palmer.[6]  The vast majority of state courts that have considered the effect of waiver

clauses in construction contracts based on the AIA model have concluded that, if the

---

[5]Church Mutual's allegation that Palmer's negligence made it possible for the arsonist to enter the Temple's property (which might otherwise give rise to a colorable argument that Palmer did not fulfill its duty of maintaining a safe work site such that injury or loss to property at the site could have been avoided) does not muddy the water.  The waiver clause would have barred an action by the Temple against Palmer because the resulting damage, caused by the fire, was covered by the Temple's property insurance.

[6]In so framing this argument, Church Mutual implicitly concedes that, if the waiver clause is found to be enforceable against it, the clause would bar its claims for damages to renovated property (i.e. "Work"), and it could only seek reimbursement for money it paid to the Temple for damage to property unrelated to the contracted-for renovations.

8

property owner relies on a pre-existing insurance policy that covers both "work" and "nonwork" property, "it waives the right to sue for all damages done as long as that damage is covered by the policy." Employers Mut. Cas. Co. v. A.C.C.T., Inc., 580 N.W.2d 490, 493-94 (Minn. 1998) (collecting cases). Because for that reason the insured property owner in Employers Mutual waived the right to sue, its insurance company, as subrogee, could not bring a similar claim in its stead. See id.

We have held that the policy underlying AIA waiver clauses, such as the clause at issue here, is "the avoidance of disputes among construction project participants," and "is best effectuated by interpreting the clause as effectively abrogating any subrogation right of the owner's insurer against the [contractor]." Commercial Union Ins. Co. v. Bituminous Cas. Corp., 851 F.2d 98, 101 (3d Cir. 1988). Here, the Temple had fully insured all of its property, both the buildings which Palmer was renovating and those it was not. We believe that the Pennsylvania Supreme Court would not only agree with our description of the underlying policy, but would follow other state courts and consider the Temple to have waived its right to sue Palmer for both "work" *and* "nonwork" related damages. Cf. Robertson v. Allied Signal, Inc., 914 F.2d 360, 378 (3d Cir. 1990) ("[F]ederal courts sitting in diversity cases are required to apply the substantive law of the state whose laws govern the action. In cases where the state's highest court has not considered the precise question to be answered, the federal court is called upon to predict how the state court would resolve the issue[.]"). Furthermore, under the subrogation

9

doctrine as it is already understood by the Pennsylvania courts, we also believe that the Supreme Court would consider Church Mutual to be barred from bringing both work and nonwork types of claims. Cf. id.

## III.

For the forgoing reasons, we will affirm the June 10, 2004 order of the District Court.[7]

---

[7]Although we reach the same result as the District Court, we do not do so in reliance on Penn Ave. Place, the decision cited by the District Court and much debated by the parties in their briefs. The clause analyzed by the Superior Court in that case was an explicit waiver of a subrogation clause, and not the clause used in the AIA contract before us now and in the cases we have cited. See Penn Ave. Place v. Century Steel Erectors, 798 A.2d 256, 260 (Pa. Super. Ct. 2002).