**JUDITH JOSEPH, Individually and as Mother and Natural Guardian of Zeon Joseph, a Minor, Plaintiff**
**v.**
**CHURCH OF GOD (HOLINESS) ACADEMY, CHURCH OF GOD HOLINESS (FOUNDATION) E.C., INC., CHURCH OF GOD HOLINESS (FOUNDATION), INGRID JEFFERS, CHERISE WILLIAMS, Individually and as Mother and Guardian Ad Litem of Raheem Christian, a Minor, Defendants**

Civil No. 338/2001

Superior Court of the Virgin Islands

Division of St. Croix

May 12, 2006

■■■■■■■■■
■■■■■■■■

VINCENT COLIANNI II, ESQ., Colianni & Colianni, St. Croix, VI , *Attorney for Plaintiff Judith Joseph*

CAROL HURST, ESQ., Carol G. Hurst, P.C., St. Thomas, VI, *Attorney for Defendants Church of God (Holiness) Academy and Ingrid Jeffers*

CABRET, *Judge*

## MEMORANDUM OPINION

(May 12, 2006)

THIS MATTER is before the Court on the joint Motion for Summary Judgment of Defendants Church of God (Holiness) Academy and Ingrid Jeffers. Plaintiff Judith Joseph opposed this motion, to which Defendants replied. On February 27, 2004, the Court heard oral arguments. Since then, numerous supplemental filings were received, further clarifying the issues. For the reasons that follow, Defendants' motion will be denied.

### I. Background

On or about March 13, 2001, Zeon Joseph, a minor, was injured when he was allegedly karate kicked by Raheem Christian, a minor, at the Church of God (Holiness) Academy, during an after-school program. Defendant Ingrid Jeffers was supervising the program on behalf of the school. On June 15, 2001, Plaintiff Judith Joseph filed suit, individually and as mother and natural guardian of Zeon Joseph, against Church of God (Holiness) Academy [hereinafter "Academy"] and Ingrid Jeffers, among others, alleging that Ingrid Jeffers negligently supervised the after-school program. Plaintiff further alleged that Ingrid Jeffers was negligent while acting within the scope of her employment with Church of God (Holiness) Academy and thus sued the Academy under the doctrine of respondeat superior.

By motion, Defendants argue that Plaintiff waived[1] any duty they owed to Zeon Joseph when Plaintiff Judith Joseph, Zeon's mother and natural guardian, signed a "Statement of Cooperation" on May 9, 2000, purportedly covering the 2000-2001 academic year during which Zeon suffered his injury. The Statement of Cooperation provided that a signer "absolve the school from liability to [the signer] or [his/her] child because of any injury to [his/her] child at school." According to Defendants, the Academy required all parents to sign this purported waiver, and Plaintiff Judith Joseph signed the Statement of Cooperation voluntarily.[2] Thus, Defendants claim that the waiver is enforceable and bars Plaintiff's action as a matter of law. Alternatively, Defendants claim that Plaintiff should be estopped from suing the Academy and Ingrid Jeffers because Zeon's participation in the after-school program was allowed at no extra charge. Defendants assert that equitable estoppel "bars a party from taking inconsistent positions to reap benefits of a position and, at the same time, avoid corresponding obligations of that position." Defendants contend that estoppel should attach because Plaintiff's retention of the benefit of free after-school childcare while at the same time maintaining a suit for damages against the childcare provider creates the requisite inconsistent positions.[3]

Plaintiff's response is three-fold. First, Plaintiff claims "that no release is applicable to the school year in which Plaintiff Zeon Joseph was

---

[1] Defendants filed a joint motion to amend their answer seeking to plead the affirmative defense of waiver in compliance with the governing rules. Pursuant to Rule 15 of the Federal Rules of Civil Procedure and Rule 15.1 of the Local Rules of Civil Procedure, Defendants' motion will be granted as it was unopposed and such leave shall be freely given when justice so requires. *See* SUPER. CT. R. 7, FED. R. CIV. P. 15(a); LRCi 15.1.

[2] Plaintiff does not argue that she was coerced into signing the Statement of Cooperation.

[3] Defendants' estoppel argument based on some form of charitable immunity is unpersuasive. *See Soto v. Bradshaw*, 9 V.I. 303, 351 F. Supp. 602 (D.V.I. 1972). To endorse Defendants' rationale would be to sanction negligence or recklessness in childcare simply because such service was provided free of charge. While the Academy and Jeffers were under no obligation to permit Zeon Joseph to remain after school for free, once they permitted him to stay, they were under an obligation, absent a waiver, to provide supervision that a reasonable person under the circumstances would have supplied.

injured."[4] Second, Plaintiff argues that the waiver, if one existed, "does not apply to injuries caused by the Academy's negligence." Such waivers, according to Plaintiff, must be clear and unequivocal to permit Defendants to avoid liability for their own negligence and the waiver in question fails to meet this threshold because Plaintiff Judith Joseph did not understand its key terms *absolve* and *liability*. Third, Plaintiff asserts that the waiver violates public policy, specifically, that "a parent cannot release a child's future claim of damages[5] ... [a]nd a school, as a provider of public service cannot prospectively contract away its liability to students." Defendants counter, stating that "it is a violation of public policy to allow a parent to sue a non-profit religious school out of existence, because she failed to pick up her child after school and his leg was broken in an unfortunate playground accident." Neither Plaintiff nor Defendants identify the Virgin Islands purported public policy.[6] Because

---

[4] Plaintiff's first basis for avoiding summary judgment lacks merit. A signed Statement of Cooperation for Zeon Joseph for the 2000-01 academic year is contained in Exhibit B to Defendants' Motion for Summary Judgment. At oral arguments, Plaintiff advocated only her second and third grounds to avoid summary judgment. Although not identified by the parties, the Court notes, however, that the purported Statement of Cooperation for the 2000-2001 academic year only contains a date by reference to the Registration Card. The placeholders where the effective years for the Statement of Cooperation should have been remain blank. Moreover, it is unclear whether a separate registration card and waiver was required of those parents who enrolled their children in the after-school program during which Zeon Joseph was injured.

[5] Even if true, the waiver might still be effective to preclude an action by Plaintiff Judith Joseph in her capacity as mother of Zeon Joseph.

[6] Of the jurisdictions where such public policy challenges have been successfully mounted to avoid the enforcement of a waiver signed by a parent, the public policy protecting children from parental mismanagement was specifically codified. *See e.g., Cooper v. Aspen Skiing Co.*, 48 P.3d 1229, 1232-33 (Colo. 2002) (identifying statutory protections for minors in a personal injury context, where a parent may only be appointed a conservator with court approval); *Hawkins ex rel. Hawkins v. Peart*, 37 P.3d 1062, 1066 (Utah 2001) (same).

The protection of minor children in actions before the Superior Court is generally found in chapter 51 of title 15, *Guardians and Wards*, though such protection is not as comprehensive or well developed. *See* V.I. CODE ANN. tit. 15, § 823 (1996). Although Plaintiff identifies the subsection 76(i) of title 5 of the Virgin Islands Code, a wrongful death provision that prohibits settlements on behalf minor beneficiaries without court approval, this may not have persuasive force in construing Virgin Islands policy for direct, as opposed to derivative, pre-injury releases signed by parents on behalf of their children. It also may be possible that such a waiver is contrary to Virgin Islands public policy concerning premises liability, however, as explained in the body, the Court does not reach this basis for denying summary judgment.

Plaintiff's first basis lacks merit, the Court will consider only the second and third bases, as they relate to the enforceability of the Statement of Cooperation.

## II. Summary Judgment Standard

█ Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to a ruling as a matter of law. *See* SUPER. CT. R. 7; FED. R. CIV. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Green v. Hess Oil V.I. Corp.*, 29 V.I. 27, 30 (Terr. Ct. 1994) (applying Federal Rule 56 to a motion for summary judgment). Courts deciding whether such genuine issues exist shall view the facts in a light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party. *Christopher v. Davis Beach Co.*, 15 F.3d 38, 40 (3d Cir. 1994). A factual issue is material if it would affect the outcome of an action and allow a reasonable jury to find for the plaintiff. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-52 (1986). Summary judgment is usually not appropriate in negligence cases because the application of the reasonable person standard normally requires a full exposition of all the underlying facts and circumstances. *Jeffrey v. Caesar*, 38 V.I. 84, 86 (Terr. Ct. 1998) (citing *Barron v. Honeywell, Inc., Micro Switch Div.*, 69 F.R.D. 390, 392 (D. Pa. 1975) and *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 n.12 (1976)).

## III. Discussion

Defendants argue that the Statement of Cooperation qualifies as an enforceable waiver of liability under contract principles and as an express assumption of risk under tort principles.[7] Defendants continue

---

[7] Defendants reference the doctrine of waiver and the defense of express assumption of risk interchangeably in their memoranda in support of summary judgment on the ground that Plaintiff waived any duty Defendants may have owed. Waiver, a doctrine that is equitable in nature, "is the voluntary and intentional abandonment or relinquishment of a known right." *Abramsen v. Bedminster*, 45 V.I. 3, 10 (Terr. Ct. 2002) (considering whether defendant waived statute of limitations defense) (internal quotations and citations omitted). The defense of express assumption of risk, as summarized by the RESTATEMENT (SECOND) OF TORTS section 496B, instead requires

> A plaintiff who by contract or otherwise expressly agrees to accept a risk of harm arising from the defendant's negligent or reckless conduct cannot recover for such harm, unless the agreement is invalid as contrary to public policy.

that Plaintiff should not escape the consequences of her agreement because of alleged ignorance; according to Defendants, Plaintiff signed similar agreements on fourteen previous occasions, and therefore had ample opportunity to ascertain its meaning. In addition to claiming that she did not understand the relevant terms of the Statement of Cooperation, Plaintiff challenges the enforceability of the agreement on two additional discrete grounds. First, Plaintiff attacks the waiver, claiming that the Academy fails to clearly and unequivocally disclaim liability for its own negligence. Second, Plaintiff contends that the waiver is unenforceable due to public policy.

---

RESTATEMENT (SECOND) OF TORTS § 496B (1965). While there are situations were a party could have waived a duty owed, and thereby liability, by assuming the risk, Defendants confuse the concept of the waiver doctrine with a plaintiff contractually waiving a duty owed by a defendant. The *waiver doctrine* is inapposite to the present matter. *See Abramsen*, 45 V.I. at 10. Defendants' arguments concern the waiving of liability and assumption of the risk—both fact-driven inquiries aimed at defeating the duty element of a negligence cause of action. A California case, cited by Defendants, explains the distinction between the contractual waiver of liability and assumption of the risk,

> By an advance waiver of liability, a potential plaintiff promises not to exercise the right to sue for harm caused in the future by the wrongful behavior of a potential defendant, eliminating a remedy for wrongdoing. By an express assumption of risk, the potential plaintiff agrees not to expect the potential defendant to act carefully, thus eliminating the potential defendant's duty of care, and acknowledging the possibility of negligent wrongdoing. Both agreements permit behavior that normally would be actionable as tortious, although an express assumption of risk goes further, more clearly authorizing this behavior.

*Coates v. Newhall Land & Farming, Inc.*, 236 Cal. Rptr. 181, 184 (Ct. App. 1987). All of Defendants' citations concern the express waiving of liability or express assumption of the risk, not the waiver doctrine. *See e.g., Coates*, 236 Cal. Rptr. at 184; *Tunkl v. Regents of University of California.*, 383 P.2d 441 (Cal. 1963) (release covering future wrongful death action held invalid under contract law).

Defendants also cite to two cases involving specific passenger–common carrier relationships. *See Hodes v. S.N.C. Achille Lauro ed Altri-Gestione*, 858 F.2d 905, 910 (3d Cir. 1988) (considering the enforceability of a boilerplate provisions by ticketed passenger); *Deiro v. American Airlines, Inc.*, 816 F.2d 1360 (9th Cir. 1987) (same). Neither of these cases provides assistance in the consideration of a waiver in the parent-school context as common carriers have been held to special standards of care.

## 1. Release is Not Sufficiently Clear and Unequivocal to Protect for Defendants' Imputed Negligence

Defendants, relying on contract principles, argue that the Statement of Cooperation is an enforceable release of any future claims that a parent or child may have against the Defendants for injuries sustained, including those due to Defendants' active and imputed negligence, while at the Academy or during an Academy activity. Both Plaintiff and Defendants agree that a release must be clear and unequivocal[8] to provide protection to the Academy for its own negligence. They disagree whether the Statement of Cooperation[9] was sufficiently clear and unequivocal and whether the specific term negligence must be used. To support her position that the release must be clear, unequivocal and specific, Plaintiff cites the following cases: *Umali v. Mount Snow Ltd.*, 247 F. Supp. 2d 567, 573 (D. Vt. 2003) (failing to enforce purported waiver signed by mountain bicycle racer on public policy grounds and denying motion for summary judgment on assumption of risk grounds); *Griffin v. Nationwide Moving and Storage Co., Inc.*, 446 A.2d 799, 803 (Conn. 1982) (failing to enforce the limited liability terms contained in a bailee's receipt where the bailor was not a sophisticated party); *Adloo v. H.T. Brown Real Estate, Inc.*, 686 A.2d 298, 304-05 (Md. 1996) (construing a realtor listing agreement providing that realtor is "not an

---

[8] When considering the enforceability of a contract, a court must make a preliminary determination regarding the ambiguity of the agreement. *Sunshine Shopping Ctr., Inc., v. Kmart Corp.*, 42 V.I. 397, 400, 85 F. Supp. 2d 537, 540 (D.V.I. 2000) (citing *Hullett v. Towers, Perrin, Forster & Crosby, Inc.*, 38 F.3d 107, 111 (3d Cir. 1994)). A contract may be found ambiguous if it is susceptible to two or more interpretations. *Sunshine Shopping Ctr., Inc.*, 42 V.I. at 400, 85 F. Supp. 2d at 540. Only if a court determines that a contract is unambiguous may a court construe the contract as a matter or law. *Id.* Otherwise, the determination is left to the jury to decide the enforceability of the agreement based on extrinsic evidence. *Id.* The assessment of the clear and unequivocal nature the Statement of Cooperation suffices for the inquiry into ambiguity of the contract.

[9] The Statement of Cooperation, in its entirety, reads as follows:

> In making application for my child it is my desire to have him complete the school year 19__ 19__. It is also my understanding that the policy of the school is to make no refunds on registration fee [sic]. I also give permission for my child to take part in all school activities, including sports and school sponsored trips away from the school premises, and absolve the school from liability to me or my child because of any injury to my child at school or during any school activity.

(Defs. Mot. for Summ. J. at Ex. B.)

insurer against the loss of the petitioners' personal property" to cover situations where a visitor steals property without negligence on the part of the realtor; agreement was not clear, unequivocal, specific or unmistakable on the issue of realtor's negligence); *Audley v. Melton*, 640 A.2d 777, 779-80 (N.H. 1994) (requiring that exculpatory contract language be specific regarding negligence).

This case involves an exculpatory contract clause, a provision that may immunize the Defendants from the consequences of their purported negligence. *See Valhal Corp. v. Sullivan Assocs., Inc.*, 44 F.3d 195, 202 (3d Cir. 1995) (defining exculpatory clauses). Thus, the cases Plaintiff cites are of little assistance as there is local law, applicable by analogy, impacting the enforceability of exculpatory contract clauses. *See Eastern Airlines v. Ins. Co. of N. Am.*, 758 F.2d 132, 134 (3d Cir. 1985) (citing *Beloit Power Sys. v. Hess Oil V.I. Corp.*, 757 F.2d 1427, 1431 (3d Cir. 1985) in support of its conclusion that an "any and all liability" indemnity provision was enforceable in spite of an indemnitee's negligence). *But see Jamison v. Ellwood Consol. Water Co.*, 420 F.2d 787, 789 (3d Cir. 1970) (distinguishing exculpatory clauses from indemnity provisions by finding that indemnity provisions were not susceptible to public policy challenges and thus more readily enforceable). If the Statement of Cooperation cannot withstand the less demanding test for indemnity agreements, then the Court need not resort to public policy considerations to determine the enforceability of an exculpatory clause at the summary judgment stage.

■ *Eastern Airlines* provides that indemnity agreements will be enforceable "if the language is sufficiently broad and unambiguous." 758 F.2d at 134. Such agreements need not "specifically refer to the [party]'s negligence." *Id. But see Gimbel Bros., Inc. v. William H. Vanderherchen, Inc.*, 468 F.2d 597, 599 (3d Cir. 1972) (requiring indemnity provision to specifically refer to indemnitee's own negligence to be enforceable). The threshold standard for enforceability of exculpatory clauses should be similar to the one for indemnity provisions – broad and unambiguous – as both are interpreted according to contract principles.[10] *See Valhal*

---

[10] Even if a Court construes an exculpatory clause as broad and unambiguous, such a clause may still be subject to challenges on public policy grounds. Notably, the fact that this case arises in a personal injury context involving less sophisticated contracting parties, as opposed to an economic damages context with more sophisticated parties as in *Eastern Airlines*, provides an additional reason for pause. This is so, because the Third

*Corp.*, 44 F.3d at 202 (applying the same test under Pennsylvania law, though different than *Eastern Airlines*, for the enforceability of exculpatory clauses and indemnity provisions).

The Statement of Cooperation, as an exculpatory contract clause, is ambiguous on the issue of whether it releases the liability of the Academy and Ingrid Jeffers to the Plaintiff for negligence in the supervision of the after-school program. There are several reasons for finding the clause to be ambiguous, or susceptible to at least two different interpretations. First, although there are circumstances where an "any or all liability" provision has been interpreted to protect a party from actions based on the party's own negligence, such a determination relied on other language within the agreement or circumstances that made the intent clear from the context.[11] Unlike the courts in *Eastern Airlines* and *Beloit Power Systems*, this Court construes an agreement without the benefit of such contextual clarifiers. Second, the release only purports to protect the *school*, the Academy, not its agents or employees like Ingrid Jeffers. While the Statement of Cooperation may be read to protect all such entities, that is neither the only permissible reading, nor the most reasonable.

Third, the release is susceptible to at least two interpretations on the nature of the negligence covered by the agreement. While Defendants urge that if the release was construed to exclude coverage of Defendants'

---

Circuit Court of Appeals previously refused to uphold indemnity provisions between sophisticated parties. *See Gimbel Bros.*, 468 F.2d at 599. Considering these additional factors portrays this provision in a more skeptical light.

[11] In *Eastern Airlines*, the indemnity provision contained both the *any and all liability* phrase and an exception that precluded indemnity where the indemnitee was *solely negligent*. *Eastern Airlines*, 758 F.2d at 133. The implication from this context would be that any demand or claim which resulted in loss to the indemnitee would give rise to a claim for indemnity where the indemnitee was anything less than solely negligent.

Similarly, in *Beloit Power Systems*, the Third Circuit found a separately negotiated provision containing the *any and all liability* phrase clear and unequivocal enough to provide for an indemnity of the indemnitee's negligence. *Beloit Power Sys.*, 757 F.2d at 1430. For the *Beloit* court, the special attention paid to the agreement, as opposed to its presence in boilerplate, was a significant factor in upholding the agreement as the product of bargaining. *Id.* at 1430-31. Also, the phrase in question was clarified by the scope of damages referenced earlier in the warranty provision. *Id.* at 1430. Specifically, the agreement limited the damages by type (excluding recovery for negligent manufacture) and amount (capped by the contract price) in requiring the indemnitor to reimburse the indemnitee for all losses arising from third-party claims. *Id.* Within this context, it was clear that this provided indemnity for the indemnitee's negligence. *Id.*

negligence it would be "meaningless because the school is not otherwise liable where it is not negligent," (Defs.' Reply to Pl.'s Opp'n to Mot. for Summ. J. at 4), Defendants' interpretation of the law is not comprehensive. The first interpretation, admittedly, is that the release protects the Academy from actions based on its own future negligence, whether active or imputed. A second reading is that the release only protects the Academy from actions based on an individual theory of active negligence; there is no mention of the agents or employees of the school and thus an imputed negligence theory premised on their actions may be outside the scope of this agreement. Finally, it is unclear whether an injury purportedly suffered during an after-school program would qualify as "at school or during any school activity." While it is possible that such an agreement may cover any activity on school grounds regardless of time, it is equally possible that the agreement covers only activities occurring during the school day.

 Where a contract is ambiguous, the determination is properly submitted to a jury to determine its enforceability based on proof by extrinsic evidence. *Sunshine Shopping Ctr., Inc., v. Kmart Corp.*, 42 V.I. 397, 400, 85 F. Supp. 2d 537, 540 (D.V.I. 2000) (citing *Hullett v. Towers, Perrin, Forster & Crosby, Inc.*, 38 F.3d 107, 111 (3d Cir. 1994)). Accordingly, the Court cannot find as a matter of law that the Statement of Cooperation can be enforced to protect the Academy or Ingrid Jeffers for their negligence, whether active or imputed.

## 2. Genuine Issue of Material Fact Exists Regarding Assumption of Risk Defense

As a second ground in support of summary judgment, Defendants cite *Keegan v. Anchor Inns, Inc.*, 16 V.I. 635, 606 F.2d 35 (3d Cir. 1979), for the proposition that a voluntary waiver or consent constitutes an absolute bar to Plaintiff's recovery. *Keegan* concerned the doctrine of express assumption of risk and in the opinion, the Third Circuit Court of Appeals adopted the RESTATEMENT (SECOND) OF TORTS section 496B (1965) to govern that defense. *Keegan*, 16 V.I. at 638-39, 606 F.2d at 37. In response, Plaintiff cites the RESTATEMENT (SECOND) OF TORTS section 496B and a series of cases from other jurisdictions for the proposition that the Academy must expressly disclaim its own liability and that the instant disclaimer does satisfy that standard.

 Assumption of risk is an affirmative defense and thus, Defendants bear the burden of establishing the absence of a genuine issue of material fact concerning their proof. RESTATEMENT (SECOND) OF TORTS § 496G. Plaintiff identifies portions of Plaintiff Judith Joseph's deposition testimony to communicate her uncertainty regarding the meaning of the term *liability* and *absolve* as there were used in the Statement of Cooperation. Specifically, Ms. Joseph believed the term *liability* to mean "something that you owe." (Judith Joseph Dep. at 125:1-8.) Ms. Joseph then continued that "the school cannot owe me because they are my children. So I have to pay them." (Judith Joseph Dep. at 125:7-8.) In addition, Ms. Joseph conceded that she did not know the meaning of the word *absolve*. (Judith Joseph Dep. at 113:24-25.) The Court need not consider whether Plaintiff Judith Joseph possessed the requisite knowledge and appreciation of risk she purportedly assumed based on her subjective understanding of language, however, to identify a genuine issue of material fact. *See* RESTATEMENT (SECOND) OF TORTS § 496B cmt. d (providing that the circumstances must "clearly indicate" that the plaintiff intended and understood the general clause to cover negligent misconduct). As the contract forming the basis for express assumption of risk is ambiguous, that ambiguity necessarily precludes the granting of a motion for summary judgment on this ground as well. Because the Statement of Cooperation is ambiguous, the Court does not reach Plaintiff's third ground, whether such a waiver is void as against public policy.

## IV. Conclusion

The Statement of Cooperation is ambiguous. Accordingly, the Court cannot as a matter of law construe the agreement or find that Plaintiff Judith Joseph expressly assumed the risk of her son Zeon's injury during an after-school program. Summary judgment will be denied in an accompanying order.