**BRANDON WALKER, Plaintiff**
**vs.**
**VIRGIN ISLANDS WASTE MANAGEMENT AUTHORITY,**
**GOVERNMENT OF THE VIRGIN ISLANDS, DEPARTMENT OF**
**HUMAN SERVICES, LATRELL JACOBS AND KAREEM CASIMIR,**
**Defendants**

Civil No. SX-11-CV-353

Superior Court of the Virgin Islands

Division of St. Croix

January 26, 2015

BRADY, *Judge*

## MEMORANDUM OPINION

(January 26, 2015)

THIS MATTER is before the Court on Defendant Virgin Islands Waste Management Authority's ("VIWMA") Supplemental Brief in Support of Motion for Summary Judgment on Count II ("Motion Supplement"), filed August 29, 2014. Plaintiff has not filed a response to VIWMA's

110

Supplemental Brief. For the reasons that follow, Defendant VIWMA's Motion will be granted.

## BACKGROUND

The history of this case was thoroughly reviewed in this Court's August 7, 2014 Memorandum Opinion and Order ("Order"), granting VIWMA partial summary judgment on Count I of Plaintiff's Second Amended Complaint — Assault and Battery. With respect to Count II, the Court held that

> Genuine issues of material fact remain unresolved and prevent entry of judgment as a matter of law against VIWMA as to Count II — Negligent Hiring, Retention, Training and Supervision. The employment status of Casimir and Jacobs with VIWMA at the time of the incident, giving rise to a different standard of care for VIWMA, is a matter to be determined by a jury. Further, Defendant VIWMA's reasonableness in hiring Casimir and Jacobs, and in supervising activities of the YES Program participants are unresolved questions of material fact to be determined by the trial jury.
>
> Order, at 13.

The Court found that neither party had adequately addressed the "issue of the effect, if any, of the Release Agreement upon the rights and obligations of the parties . . ." and declined to rule on the issue, while ordering further briefing. *Id.* at 14.[1]

Defendant VIWMA complied with the Order and submitted its Supplemental Brief on August 29, 2014. Plaintiff declined the Order's invitation to respond to VIWMA's supplemental briefing on the issues in

---

[1] Plaintiff's mother, Alesia Jerrels, executed a Release, Hold Harmless and Indemnity Agreement ("Release Agreement"), dated June 28, 2010, wherein on behalf of her then-minor son she "releases and holds harmless" VIWMA and related parties "FROM ANY AND ALL CLAIMS, DAMAGES (INCLUDING PERSONAL INJURY, PROPERTY OR CONSEQUENTIAL DAMAGES), LIABILITY AND/OR CAUSES OF ACTION, whether resulting from negligence, breach of warranty, strict liability or otherwise arising out of or in any way related to the Youth Environmental Summer Program.

"I understand that it is the intention of this Agreement that neither I nor my child will file a claim or law suit against VIWMA . . . except if the VIWMA is grossly negligent which negligence caused me or my child injury." VIWMA Motion and Brief Requesting Summary Judgment on Plaintiff's Second Amended Complaint ("Original Motion"), Exhibit 6, emphasis in original.

dispute and the Court accepts Plaintiff's silence despite the passing of more than four months as his indication that he relies upon the record and his arguments previously presented.

At issue is whether the June 28, 2010 Release Agreement, executed by Plaintiff's mother before the incident while Plaintiff was still a minor, shields VIWMA from liability on Count II — Negligent Hiring, Retention, Training and Supervision, notwithstanding the existence of disputed facts relating to VIWMA's hiring, training and supervision of individual Defendants Jacobs and Casimir who allegedly assaulted Plaintiff, giving rise to his claims.

## DISCUSSION

A moving party will prevail on a motion for summary judgment where the record shows that there is no unresolved genuine issue of material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a), applicable pursuant to SUPER. CT. R. 7; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The reviewing court must determine whether there exists a dispute as to a material fact, the determination of which will affect the outcome of the action under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Such a dispute is genuine if the evidence is such that a reasonable trier of fact could return a verdict for the nonmoving party. *Id.* In analyzing the evidence, the court must consider the pleadings and full factual record, drawing all justifiable inferences in favor of the nonmoving party, to determine whether the movant has met its burden of showing that there is no unresolved genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

A party opposing a motion for summary judgment may not rest upon the allegations or denials within its pleadings, but must set forth specific facts showing that there is a genuine issue for trial, such that the jury or judge as fact finder could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248. The nonmoving party asserting that a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record . . ." FED. R. CIV. P. 56(c)(1)(A). *See also Williams v. United Corp.*, 50 V.I. 191, 194 (V.I. 2008), citing Rule 56(e) prior to its 2010 amendment. "As to materiality, only those facts that 'might affect the outcome of the suit under the

governing law will properly preclude the entry of summary judgment.' "
*Id.* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248).

### Defendant VIWMA is entitled to judgment as a matter of law on Count II of Plaintiff's Second Amended Complaint — Negligent Hiring, Retention, Training and Supervision.

#### a. *There are no genuine issues of material fact in dispute.*

The parties have presented no allegations that there remain unresolved issues of material fact regarding the circumstances surrounding the execution of the Release Agreement, or its substance. VIWMA has not addressed the factual circumstances that resulted in the execution of the Release Agreement by Plaintiff's mother, Alesia Jerrels. In executing the Release Agreement, however, Ms. Jerrels confirmed: "I agree to the terms of this agreement as a condition precedent to permit me and/or my child to participate in the YES Summer Program." Original Motion, Exhibit 6.

Plaintiff has never challenged the substance or terms of the Release Agreement, or the circumstances giving rise to its execution.[2] Plaintiff does not contest that Alesia Jerrels signed the Release Agreement on his behalf when he was a minor and, as his mother, she was acting as his custodial parent.

Accordingly, the Court will examine whether the Release Agreement, by operation of law, prevents Plaintiff from suing VIWMA, effectively shielding Defendant VIWMA, even in the event of its own negligence (but not in the event of its gross negligence).

#### b. *As a matter of law, the Release Agreement shields Defendant VIWMA from liability for negligence.*

Defendant VIWMA cites *Joseph v. Church of God (Holiness) Academy,* 47 V.I. 419 (Super. Ct. 2006) in which then Presiding Judge

---

[2] Plaintiff's only reference to the Release Agreement is set out in his original response to VIWMA's Original Motion, wherein he stated that "We disagree" with VIWMA's assertion that the Release Agreement "precludes liability," apparently on the basis that "[o]nly persons who have attained the age of majority can execute a binding contract" and that "any document signed by Plaintiff while under the age of eighteen is none binging [*sic*] upon him." Plaintiff's Response to VIWMA's Original Motion, at 5. As noted in the Order, "Plaintiff ignores the fact that he, as an unemancipated minor, did not sign the Release Agreement, but that his mother, as his custodial parent obligated for his support (16 V.I. CODE § 342(a)(2)), executed the Release Agreement on his behalf." Order, at 13.

Cabret denied two defendants' motion for summary judgment based upon a properly executed release, finding the "exculpatory contract clause . . . to be ambiguous, or susceptible to at least two different interpretations." *Id.* at 427. The Court did not examine the public policy implications of enforcing the release agreement in question because the agreement could not ". . . withstand the less demanding test for indemnity agreements," namely whether ". . . the language is sufficiently broad and unambiguous." *Id.* at 426 (citing *Eastern Airlines v. Ins. Co. of N. Am.*, 758 F.2d 132, 134 (3d Cir. 1985)).

▆ First, the Court examines the language of the Release Agreement pursuant to basic contract law to determine if it is "clear and unequivocal." *Joseph*, 47 V.I. at 425. A contract is ambiguous "if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Booth v. Bowen*, Civ. No. 2006-217, 2008 U.S. Dist. LEXIS 1678, *5 (D.V.I. January 10, 2008) (unpublished) (citing *Church Mut. Ins. Co. v. Palmer Constr. Co.*, 153 Fed. Appx. 805, 808 (3d Cir.2005)).

The Release Agreement is less than one page long and contains the following relevant language: "In consideration for being permitted to participate in the Youth Environmental Summer Program (YES) the undersigned hereby releases and holds harmless the Virgin Islands Waste Management authority . . . as well as their employees, agents . . . FROM ANY AND ALL CLAIMS, DAMAGES (INCLUDING PERSONAL INJURY, PROPERTY OR CONSEQUENTIAL DAMAGES), LIABILITY AND/OR CAUSES OF ACTION, whether *resulting from negligence*, breach of warranty, strict liability, or otherwise arising out of or in any way related to the Youth Environmental Summer Program." Original Motion, Exhibit 6 (italicized emphasis added).

The Release Agreement further states that "I understand that it is the intention of this Agreement that neither I nor my child will file a claim or law suit against VIWMA . . . except if the VIWMA is grossly negligent which negligence caused me or my child injury." *Id.*

In *Joseph*, the Court found that the release agreement at issue was not sufficiently broad and unambiguous because it simply ". . . provided that a signer 'absolve the school from liability to [the signer] or [his/her] child because of any injury to [his/her] child at school.' " *Joseph*, 47 V.I. at

421.[3] The release agreement was deemed to be ". . . ambiguous on the issue of whether it releases the liability of the Academy and Ingrid Jeffers to the Plaintiff for negligence in the supervision of the after-school program." *Id.* at 427.[4] The Court held further that the release language was ambiguous as to what type of negligence was covered: "there is no mention of the agents or employees of the school and thus an imputed negligence theory premised on their actions may be outside the scope of this agreement." *Id.*

 With respect to the Release Agreement in this case, there are no such ambiguities. Ms. Jerrels, lawfully signing for her son Plaintiff Brandon Walker,[5] agreed in no uncertain terms that she was giving up the right to sue VIWMA ("releases and holds harmless") in exchange for Plaintiff's participation in the YES program. The Release Agreement specifically extended coverage to VIWMA's "employees, agents, contractors, subcontractors."[6] The Release Agreement sets forth its broad scope with specific language that provides greater context than the ambiguous exculpatory clause in *Joseph,* and provides clarity as to its intent by referencing that it covers "any and all claims, damages (including personal injury, property or consequential damages), liability and/or causes of action," including claims "resulting from negligence

---

[3] The Court found that, "although there are circumstances where an 'any or all liability' provision has been interpreted to protect a party from actions based on the party's own negligence, such a determination relied on other clear language within the agreement or circumstances that made the intent clear from the context." *Joseph,* 47 V.I. at 427.

[4] The Court found that "the release only purports to protect the *school,* the Academy, not its agents or employees like Ingrid Jeffers. While the Statement of Cooperation may be read to protect all such entities, that is neither the only permissible reading, nor the most reasonable." *Id.* at 427.

[5] Ms. Jerrels lawfully bound her minor child to a contract by executing the Release Agreement in her capacity as his custodial guardian. *See* 16 V.I.C. § 342(a)(2).

[6] Courts in the Virgin Islands have held that broad terms may be enforceable in a release agreement: "The intent of the parties to the Release here is similarly clear. Indeed, there is only one way to interpret the Release's clause exempting the defendants of liability 'from all . . . causes of action of whatever kind or nature.' . . . ('The term "any and all" . . . is all-encompassing and leaves little doubt as to the liability from which the boat owners released the Yacht Club. In short, "all" means all.' . . . ; *Royal Ins. Co. v. Southwest Marine,* 194 F.3d 1009, 1014 (9th Cir. 1999) (holding that a clause releasing the defendant from liability for 'all claims, losses, damages, liabilities or expenses . . . resulting directly or indirectly from the performance of this Agreement' clearly exempted the defendant from liability for breach of warranty, breach of contract, and negligence)." *Piché v. Stockdale Holdings, LLC,* 51 V.I. 657, 668 (D.V.I. 2009).

[excepting gross negligence], breach of warranty, strict liability, or otherwise arising out of or in any way related to the Youth Environmental Summer Program," while specifically confirming that Ms. Jerrels was waiving potential future claims and legal rights on behalf of her son. While the Release Agreement does not specifically release VIWMA from the negligent acts of its employees and agents, it broadly and clearly absolves VIWMA from liability stemming from acts of negligence in connection with the YES program. The average person can clearly comprehend, from the express language of the Release Agreement, that she is waiving her right to sue VIWMA for any act not arising from the gross negligence of VIWMA.

On the basis of the record, the Court finds that the Release Agreement contains broad and unambiguous language that specifically, clearly and unequivocally releases VIWMA from any liability for claims resulting from negligence related to its Youth Environmental Summer Program.

c. *The best public policy for the Virgin Islands is to uphold release agreements signed by custodial guardians which waive claims for ordinary negligence against non-profit institutions working to service the community of the Virgin Islands.*

Even though the Release Agreement is broad and unambiguous, the Court will examine "public policy considerations to determine the enforceability of an exculpatory clause," where a custodial guardian waives a minor's right to litigate his simple negligence claim. *Joseph*, 47 V.I. at 424 (citing *Umali v. Mount Snow Ltd.*, 247 F. Supp. 2d 567, 573 (D.Vt. 2003)). VIWMA urges that case law from other jurisdictions draws a public policy distinction between release agreements provided in the context of civic or educational activities, as opposed to those provided in connection with participation in a commercial venture. Motion Supplement, at 4-6.

There is no statute or binding common law rule in the Virgin Islands addressing the public policy concerns implicated when a parent or guardian waives a minor's right to sue based on ordinary negligence. In the absence of binding Virgin Islands law, it is necessary to conduct a Banks analysis to determine the appropriate common law rule to apply to Plaintiff's claim. *See Banks v. International Rental & Leasing Corp.*, 55 V.I. 967, 977-78 (V.I. 2011); *see also Gov't of the Virgin Islands v. Connor*, 60 V.I. 597 (V.I. 2014). As long as the Court undertakes a *Banks*

116

analysis, the Virgin Islands Supreme Court has made it abundantly clear that this Court is vested with the authority to create common law. ("The Superior Court possesses, in the absence of binding precedent from this Court, concurrent authority with this Court to shape Virgin Islands common law." *Banks*, 55 V.I. at 977-78.)

The Court considers three factors in deciding what common law rule to adopt as the applicable standard for an issue in dispute: "(1) whether any Virgin Islands courts have previously adopted a particular rule; (2) the position taken by a majority of courts from other jurisdictions; and (3) most importantly, which approach represents the soundest rule for the Virgin Islands." *Connor*, 60 V.I at 600 (quoting *Simon v. Joseph*, 59 V.I. 611, 623 (V.I. 2013)).

· ██ As to the first factor, while no court in the Virgin Islands has addressed this specific question of whether a parental guardian can waive a minor's pre-injury tort claims, several courts have examined the public policy implications of a release agreement barring the signor's personal injury claims against a defendant. In *Booth v. Bowen*, the District Court upheld the traditional standard that any portion of a release barring claims of gross negligence is unenforceable, but did not address acts of ordinary negligence. 2008 U.S. Dist. LEXIS 1678 at *10. However, "[u]nder the applicable Virgin Islands law, generally a party may exempt itself from liability for its own negligence." *Delponte v. Coral World Virgin Islands, Inc.*, 233 Fed. Appx. 178, 180 (3d Cir. 2007), citing RESTATEMENT (SECOND) OF CONTRACTS § 195 (1981). In an admiralty personal injury claim, the District Court upheld the rule that "to be valid, the release must: (1) clearly and unequivocally indicate the intentions of the parties, and (2) not be inflicted by a monopoly, or a party with excessive bargaining power." *Piché v. Stockdale Holdings, LLC*, 51 V.I. 657, 667 (D.V.I. 2009) (citations omitted).

██ While the specific issue at hand of a custodial parent's execution of a release on behalf of her minor child has not been addressed in the Virgin Islands, ample case law from the Virgin Islands has upheld releases and waivers as effective hold-harmless clauses that bar a plaintiff from seeking damages as a result of ordinary negligence.

Second, the Court examines the position taken by a majority of courts from other jurisdictions. Persuasive authority regarding public policy concerns pertaining to releases is set forth in RESTATEMENT (SECOND) OF CONTRACTS § 195 (1981), but the specific issue of whether a parental

117

guardian can waive a minor's future right to bring an action for ordinary negligence is not addressed. A brief survey of case law throughout the United States follows to ascertain how other jurisdictions have handled this specific question.

In *Hojnowski v. Vans Skate Park*, 187 N.J. 323, 901 A.2d 381 (2006), a parental guardian signed a pre-injury release on behalf of her minor son which purported to hold the owner of a private skate park harmless for acts of ordinary negligence resulting in injury on the defendant's premises. Shortly after, the minor was injured and his guardian commenced an action for negligence. In responding to the defendant's invocation of the clear and explicit release, the Supreme Court of New Jersey held that ". . . in view of the protections that our State historically has afforded to a minor's claims and the need to discourage negligent activity on the part of commercial enterprises attracting children, we hold that a parent's execution of a pre-injury release of a minor's future tort claims arising out of the use of a commercial recreational facility is unenforceable." *Id.* at 338.

The New Jersey Court noted the important distinction between commercial enterprises and non-profit organizations which reflects the view held by the majority of jurisdictions:

> The only published decisions in which such agreements have been upheld are in connection with non-commercial ventures, such as volunteer-run or non-profit organizations. Without expressing an opinion on the validity of parental liability releases in such settings, it suffices to note that volunteer, community, and non-profit organizations involve different policy considerations than those associated with commercial enterprises. Such a distinction is buttressed by the fact that the Legislature has afforded civil immunity from negligence to certain volunteer athletic coaches, managers, officials, and sponsors of non-profit sports teams, while not providing similar immunities from negligence in the commercial realm.

*Id.* at 337-38 (citations omitted).[7]

---

[7] The New Jersey Supreme Court conducted a survey similar to that required in a *Banks* analysis identifying other courts throughout the country which have upheld minors' release agreements for non-profit organizations: *See, e.g., Hohe v. San Diego Unified Sch. Dist.*, 224

In *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St. 3d. 367, 1998 Ohio 389, 696 N.E.2d 201 (1998), the Supreme Court of Ohio came to a similar conclusion when examining a release agreement indemnifying the non-profit Mentor Soccer Club from a minor's ordinary negligence claims. The Court held that ". . . parents have the authority to bind their minor children to exculpatory agreements in favor of volunteers and sponsors of nonprofit sport activities where the cause of action sounds in negligence. These agreements may not be disaffirmed by the child on whose behalf they were executed." *Id.* at 374.

Similarly, in *Kirton v. Fields*, 997 So. 2d 349 (Fla. 2008), the Supreme Court of Florida discussed and adopted the public policy considerations laid out in *Zivich*, stating:

> These jurisdictions that have upheld pre-injury releases have done so because community-run and school-sponsored type activities involve different policy considerations than those associated with commercial activities. As the Ohio Supreme Court explained in *Zivich*, in community and volunteer-run activities, the providers cannot afford to carry liability insurance because volunteers offer their services without receiving any financial return. If pre-injury releases were invalidated, these volunteers would be faced with the threat of lawsuits and the potential for substantial damage awards, which could lead volunteers to decide that the risk is not worth the effort.

*Id.* at 363.

In *Woodman v. Kera, LLC*, 280 Mich. App. 125, 760 N.W.2d 641 (Mich. 2008), the Michigan Court of Appeals applied the rationale of *Zivich*, distinguishing between commercial and non-commercial activities in reviewing public policy considerations:

---

Cal.App.3d 1559, 274 Cal.Rptr. 647, 648-50 (1990) (upholding parental agreement releasing any claims of minor child resulting from child's participation in school-sponsored event); *Gonzalez v. City of Coral Gables*, 871 So. 2d 1067, 1067 (Fla. Dist. Ct. App. 2004) (upholding parental liability release in context of "community or school supported activities"); *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St. 3d 367, 1998 Ohio 389, 696 N.E.2d 201, 207 (1998) (holding that parent may bind minor child to provision releasing volunteers and sponsors of non-profit sports activity from liability for negligence); *Sharon v. City of Newton*, 437 Mass. 99, 769 N.E.2d 738, 741, 745 (2002) (concluding that parent had authority to bind minor child to exculpatory release as condition of child's participation in public school extracurricular sports activities). *Id.* at 337-38.

Concurrently, I acknowledge the public-policy concerns and reasoning underlying distinctions developed in other jurisdictions pertaining to the validity of such waivers dependent on the nature of the activity engaged in regarding for-profit and nonprofit activities or services. However, even following the reasoning of other jurisdictions, the exceptions recognized in those cases are not applicable given the for-profit nature of defendant's business.

*Id.* at 149-50.

A survey of how other jurisdictions approach the public policy considerations involving a parental guardian's waiver of her minor child's future right to bring an action for ordinary negligence suggests that a majority of courts uphold such waivers in the limited circumstance when a waiver protects a non-profit institution from lawsuits based on ordinary negligence.

Finally, and most importantly, this Court must examine which approach represents the soundest rule for the Virgin Islands. In this regard, the public policy considerations of the noted jurisdictions are persuasive. The Court notes that there are limited opportunities in the Virgin Islands for elementary and secondary school children to participate in summer and afterschool activities. Many parents do not have the financial resources to take advantage of programs and activities requiring payment of fees or tuition of participants.

Fortunately, government-affiliated entities and non-profit organizations do provide certain opportunities for students free of charge, such as Defendant VIWMA's YES Program. The YES Program promotes a range of important skills, allows teenagers to remain actively and positively engaged during the summer months and gives parents peace of mind in the knowledge of students' participation in an educational and character-building program, all at no cost to them.[8] It is important and in the public interest that opportunities for teens such as the YES Summer Program exist without cost to student participants and their parents.

As an activity of VIWMA, the YES Program is ultimately taxpayer funded. Defendant VIWMA would be exposed to liability if the Court

---

[8] Workshops included Character Building, Career Business, Career Hydroponics, Tool and Equipment Usage, Work Ethics and Career Bio Technology. *See* Defendant's Original Motion, Exhibit 8.

were to hold its release for ordinary negligence invalid. Such a result would shift liability and costs to VIWMA and, by extension, the Virgin Islands government and taxpayers. This potential for liability could result in the discontinuation of the tuition-free YES Program. "[I]n community and volunteer-run activities, the providers cannot afford to carry liability insurance because volunteers offer their services without receiving any financial return. If pre-injury releases were invalidated, these volunteers would be faced with the threat of lawsuits and the potential for substantial damage awards, which could lead volunteers to decide that the risk is not worth the effort." *Kirton*, 997 So. 2d at 363.

■ Because the risk of exposure to liability carries with it the real possibility that VIWMA may be unable or unwilling to provide YES Program tuition-free to its participants, the Court finds that the public interest is best served by upholding the Release Agreement according to its terms.

■ Custodial parents may, as did Alesia Jerrels in this case, lawfully prosecute personal injury claims on behalf of their minor children who have been harmed by the tortious act of third parties, as part of their obligation to provide support.[9] The same provisions that allow a custodial parent to sue on behalf of a minor child conversely permit the parent to enter into a contractual agreement on behalf of the child to agree to forgo the right to sue in exchange for the right to participate in a not-for-profit educational program.

The release from liability provided in this case in exchange for the right to participate in the YES Program sufficiently protected Plaintiff's interests from overreaching on the part of VIWMA. To be effective, the Release Agreement must be clear and unambiguous. It may only shield VIWMA from ordinary negligence, but not from gross negligence or the reckless conduct of VIWMA, its agents or employees. The Release Agreement in favor of VIWMA is upheld only because and to the extent that VIWMA acts as a non-profit providing a program of benefit to the community.

In balancing the benefits and potential detriments to upholding the Release Agreement, the Court concludes that the soundest rule for the

---

[9] *See* 16 V.I.C. § 342(a)(2). Also by 15 V.I.C. § 824 ("Rights of guardians and parents"), parents "shall be entitled to the custody of the person of the minor and the care of his education."

Virgin Islands, and the common law rule it adopts follows the majority of other jurisdictions to uphold the Release Agreement signed by Plaintiff's custodial parental guardian during his minority which waives his claims for ordinary negligence against VIWMA, operating as a not-for-profit organization providing a service benefitting the community of the Virgin Islands.

## CONCLUSION

There are no genuine issues of material fact that preclude entry of judgment as a matter of law dismissing with prejudice Count II of Plaintiff's Second Amended Complaint against VIWMA, alleging Negligent Hiring, Retention, Training and Supervision. In the light most favorable to the nonmoving party, the Release Agreement is a clear and unequivocal exculpatory agreement, containing broad and unambiguous language that releases VIWMA from all ordinary negligence. On the basis of the existing record, the Court cannot conclude that public policy considerations preclude enforcement of the Release Agreement.

In light of the foregoing, Defendant VIWMA's Motion for Summary Judgment on Count II — Negligent Hiring, Retention, Training and Supervision will be is granted and Count II will be dismissed with prejudice as to Defendant VIWMA only. An Order consistent with this Memorandum Opinion will enter forthwith.